SYLVAIN BLUM ET AL. v. R. & T. R. LOGGINS.

*(Case No. 819.)*

1. NEGOTIABLE INSTRUMENT — NOTICE — PRESUMPTION.— The mere possession of a negotiable instrument produced in evidence by the indorsee or assignee when no indorsement is necessary, imports *prima facie* that he acquired it *bona fide* for full value, in the usual course of business, before maturity and without notice of any circumstance impeaching its validity, and that he, as the owner, is entitled to recover as against the maker, notwithstanding there might be a good defense to the instrument against the payee.

2. SAME.— To admit a defense by the maker of such an instrument against the assignee, the maker must first prove that there was fraud or illegality in the inception of the instrument, or other circumstances which raise a strong suspicion of fraud or illegality. When this is done, it will devolve upon the holder to show that he acquired the instrument *bona fide*, for

value, in the usual course of business, while current, and under circumstances which created no presumption that he knew the facts which impeached its validity.

3. ANTECEDENT INDEBTEDNESS AS CONSIDERATION FOR NOTE, etc.— The assignment of a negotiable note for the purpose of liquidating a preexisting indebtedness, is not out of the usual course of business in the transfer and assignment of commercial paper, and is for a valuable consideration.

4. CASES DISTINGUISHED.— This case distinguished from Ayres v. Duprey, 27 Tex., 593.

5. NEGOTIABLE PAPER.— When the holder of a negotiable note takes the legal title to the same merely as the agent of the payee, by whom it has been indorsed to him, and has himself no interest in the paper, but merely authority to collect it and apply the proceeds to a debt due him, the maker may avail himself of any defense to which he would be entitled if sued directly by the indorser.

6. INJUNCTION.— When the equities of a bill for injunction are fully met and denied by the sworn answer, the injunction should be dissolved.

ERROR from Waller. Tried below before the Hon. Wm. Burkhart.

The statement of the nature and result of the suit made by plaintiff, and not controverted, is substantially as follows, viz.: R. Loggins and R. T. Loggins, his son, brought suit against E. Blanc and E. P. Alsbury, and against Leander Cannon and Fen Cannon, as partners, doing business under the name of Cannon & Co., and against Leon Blum and Sylvain Blum.

The petition alleged that on the 21st of April, 1871, R. Loggins executed and delivered to Cannon & Co. four notes, each for $2,500, and payable respectively on Sept. 10, Oct. 10, Nov. 10 and Dec. 10, after date, to the order of Cannon & Co., and at the same time, by way of securing said notes, executed and delivered to Leon Blum, as trustee, a deed of trust on growing crop for the year 1871, upon plantations owned and controlled by R. Loggins, in the county of Austin, and also upon his mercantile stock and fixtures in Hempstead. That these securities were placed with Cannon & Co., not wholly on account of past or existing indebtedness, but to secure Cannon & Co., also, for advances to be made in money and guarantees thereafter. That

to secure the same liability, R. Loggins and R. T. Loggins, on the 2d of Feb., 1872, delivered to Cannon & Co. their note for $10,000, payable to Cannon & Co., Dec. 1, 1872, and a deed of trust to E. Blanc on a plantation called the Rock Island place, and on the crop for that year on the Whitworth place, this deed of trust being to secure the last named note. That the securities of Feb. 2, 1872, were executed at the earnest solicitation of Cannon & Co., at a time when R. Loggins was too feeble in health to transact business, and was procured from him by imposition and false representations and promises made by Cannon & Co., namely: that the merchandise mortgaged by deed of trust of April 21, 1871, should be exhausted and applied upon the debt before resorting to the property covered by deed of Feb. 2, 1872; that the land mortgaged Feb. 2, 1872, was the homestead of R. T. Loggins and his family, who received no consideration for the note and deed, and only executed them to please and quiet his father; indeed, both plaintiffs aver the last named deed to have been without consideration, null and void. That in March, 1872, R. Loggins, at the instance of Cannon & Co., and in order to pay first the debt of $10,000 and then other debts due by him, set over to Leander Cannon and E. P. Alsbury his stock of merchandise at Hempstead, worth $9,000, and some $9,000 in notes and accounts, aggregating $18,000 of assets, and more than sufficient to pay the debts for which they were thus appropriated by Loggins; Cannon & Co. and Alsbury stipulating to so apply the assets received. That Alsbury, as agent of Cannon & Co., took charge of the property and claims so set over, and has since realized on them largely, to wit: to the extent of $10,000, more accurate statement being impossible, because of failure and refusal of Cannon & Co. and Alsbury to render proper accounts (and in this connection Cannon & Co. and Alsbury are required by the bill to answer upon oath the truth concerning such accounts, realization and application of assets). That Cannon & Co. and Alsbury failed to perform their agreements in regard to applying the assets

turned over to them. That after so transferring his assets, R. Loggins paid from his other means $3,000 on the debt secured by the deed of trust, and $4,000 on other debts intended to be provided for by his transfer of assets to Cannon & Co. and Alsbury. That Cannon & Co., contriving to cheat plaintiffs, had made a pretended transfer of the deed of trust of Feb. 2, 1872, and the indebtedness secured thereby to Sylvain Blum, who is alleged to have received said securities with full knowledge of the alleged infirmities. That Blanc, as trustee, has advertised the land for sale to satisfy the balance due on the debt secured by the trust deed, viz.: about $7,000.

Prayer was made that Cannon & Co. and Alsbury be required to account for the property received by them; that the proceeds be applied first to pay the debt secured by trust deed of Feb. 2, 1872; that until an adjustment can be had, the enforcement of the trust deed may be enjoined; that both deeds of trust and the notes secured thereby may be ordered brought into court and cancelled; and for general relief. The district judge ordered the injunction as prayed. The two deeds of trust were made exhibits. Defendant Fen Cannon pleaded in abatement that he was never a member of the firm, and denied complicity in the alleged conspiracy. Defendant Sylvain Blum denied that Fen Cannon and Leander Cannon composed the firm of Cannon & Co. He admitted, on information, that R. Loggins was doing a mercantile business at Hempstead, but had no information of the particulars or magnitude of the business. Upon information acquired after the filing of this suit, he admitted the execution of the notes and deed of April, 1871, but had no knowledge of the consideration of them, nor of the condition of accounts between Cannon & Co. and R. Loggins at the date of the trust deed. He admitted the execution of the notes and deed of Feb., 1872, but had no information of the identity between the indebtedness evidenced thereby, and that evidenced by the notes of April, 1871. Upon information and belief, he denied the incapacity of R. Loggins from sickness to

execute the note and deed of Feb., 1872, and the alleged impo-
sition, fraud and deceitful promises of Fen Cannon in procur-
ing the deed and note. He disclaimed all knowledge of the
condition of accounts between Cannon & Co. and R. Loggins
at the date of the second trust deed, and denied the existence
of homestead rights claimed by R. T. Loggins, in whom he
admitted the title to the land was apparently vested; but, as re-
spondent was informed, the beneficial interest was in R. Loggins.

He disclaimed all knowledge of the inducements of fraud to
execute the note and deed of Feb., 1872, and of the considera-
tion therefor; further than that, the note by its terms purported
to have been given for value received. He denied the alleged
nullity of the instruments, and alleged them to be valid. He
disclaimed all knowledge of the alleged transactions between
R. Loggins, Alsbury and Cannon & Co., in March, 1872, and
subsequent dealings in reference thereto, or growing therefrom;
admitted the payment of $3,000 on the note of Feb. 2, 1872,
alleged to have been made in Dec., 1872; admitted that Feb.
15, 1872, Cannon & Co. transferred to him the note and deed
of Feb. 2, 1872; denied that the transfer was colorable, and
alleged it to be *bona fide* for value; admitted the advertise-
ment of the property by Blanc, the trustee; denied all knowl-
edge of infirmity in, and defenses to, the note and trust deed,
and of all the alleged transactions between the plaintiffs and
Cannon & Co., except such as were patent upon the face of the
note and trust deed. He alleged that about Feb. 15, 1872,
Leander Cannon, who was doing business under the firm name
of Cannon & Co., applied to him for funds to use in his busi-
ness; that Cannon showed him a detailed statement of the
business condition of Cannon & Co., from which defendant be-
lieved that with a little help the firm would be able to right itself
and become profitable; that he agreed to discount the note
and trust deed of R. and R. T. Loggins, and did so, and paid
therefor $10,000 to Cannon & Co., who thereupon transferred
to him the note and trust deed. This transfer, he averred, was

made in entire good faith, without any notice on his part of anything calculated to throw suspicion on the note and trust deed, or on the right of Cannon & Co. to negotiate them. He alleged that he took from Cannon & Co. a written transfer of the securities and caused it to be immediately recorded in the county where the land lay, and since that time has continuously owned and held the securities, which fact was within the knowledge of plaintiffs long before, and up to the time of the payment of $3,000, made on said note in December, 1872.

He pleaded, in reconvention, the execution of the note by plaintiffs, the *bona fide* purchase of it by himself for value before maturity, and prayed judgment against plaintiffs for the amount of the note and interest, less the credit of $3,000 in December, 1872, and for dissolution of the injunction.

Leon Blum demurred, because the bill did not show him to be in any wise answerable for the property alleged to have been conveyed to him in trust, and answered that the use of his name as trustee in the original deed of trust was unknown to him until long after it was done; that he had never acted in reference thereto, and he disclaimed any and all interest in the property and the suit.

The answer of Leander Cannon and of Alsbury, in view of the opinion, need not be stated, but they denied all fraud, etc., charged.

Upon consideration of the petition by the district judge, an injunction was granted and issued as prayed; and a motion to dissolve, made by the defendant Sylvain Blum, upon bill and answer, was overruled.

The plaintiffs, in an amended petition, among other things, charged that the transfer to Alsbury of the stock and other assets, was for the benefit of Leon & H. Blum, for whom Leander Cannon and Alsbury were acting therein, and that Leon & H. Blum knew of and were chargeable with every defense which could be made against Cannon & Co. and Alsbury on the note, and in respect of the alleged dealings between the parties.

Defendants Blum, by an amended answer, in response to this amendment of the petition, denied all the allegations, specifically, and at length, except as to the membership of the firm of Leon & H. Blum, the payment of $3,000 on the note, and other exceptions not necessary to state.

The special verdict referred to in the opinion was in response to the following special issues, viz.:

*First.* Was the first deed of trust in evidence before you, given for the purpose of covering commercial advances to be made by Cannon & Co. to Reuben Loggins, and not for a then existing debt?

*Second.* Was the second deed of trust, in which Reuben Loggins was joined by R. T. Loggins, given for a debt that had become due Cannon & Co., and if yea, was it the same debt for which the first deed of trust was given, and was the same given in consideration that the property in the first deed mentioned should be exhausted before the second deed should be resorted to? Was there any understanding between Cannon & Co. or their representatives and Loggins, before and at the time of the execution of the second deed, that this should be done; and did Loggins and son execute the second deed upon such an understanding and agreement?

*Third.* Was there any understanding and agreement between Loggins and Cannon, or their representatives, at the time of the execution of the second deed of trust, that the matters and things in the first deed contained in the way of security should be applied to the payment of the debt of $10,000, and be altogether exhausted before the second should be resorted to?

*Fourth.* Did Cannon & Co., or their representatives, have full and absolute control of the property in the first deed mentioned, and was it in their power, and did they have the authority, to appropriate this property to the satisfaction of this deed?

*Fifth.* Was the property covered by the first deed of trust sufficient, under proper management, to liquidate and settle the

indebtedness for which it was pledged; and did Cannon & Co., or those acting under them, receive out of said property, by sales or otherwise, sufficient to cover said amount? In addition to this, you will state how much the property was worth at the time Cannon & Co., or their agents, took charge of the same, provided you believe they took such charge, and how much was appropriated, or might have been appropriated, to the satisfaction of the trust deed? If the property mentioned in said first trust deed was not sufficient in value, and, under proper management, to satisfy it, state how much insufficient, or if more, state the excess?

*Sixth.* Who managed the business under Cannon's advice or instruction, if it were so managed, that is, the former business of Loggins & Coggeshall, and was it for Cannon & Co.'s benefit?

*Seventh.* Was the second trust deed transferred to L. & H. Blum, or to Sylvain Blum? By this you are required to answer as to who actually owned the deed as assigned of Cannon & Co.? Who is actually the owner now of said deed? .

*Eighth.* When was said second deed of trust transferred?

*Ninth.* At the time of the transfer of the said deed of trust, were Sylvain Blum and the firm of L. & H. Blum aware that there were promises, agreements and undertakings, between Cannon & Co. or their representatives and Loggins, provided you believe there were such agreements, etc., that the property covered by the first deed of trust should be exhausted before the second should be resorted to?

*Tenth.* Were there any fraudulent combinations, devices or representations on the part of the defendants, Cannon & Co., towards the plaintiffs, in securing the execution of the second deed of trust? If yea, state them, and also state who were the parties thereto, and what defendants in this cause were cognizant thereof.

*Eleventh.* Was the second deed of trust transferred to L. & H. Blum or Sylvain Blum, and the date of such transfer? If the same were transferred to either L. & H. Blum or Sylvain

Blum, was said transfer made for the purpose of liquidating an antecedent and outstanding indebtedness of Cannon & Co., or did said Cannon & Co. receive in consideration of such transfer money or the equivalent of money?

*Twelfth.* Was the said second deed of trust assigned by Cannon & Co. before or after due? To whom was said assignment made? Was the purchaser or the person to whom the same was assigned aware, or have reason to believe, that said deed of trust was procured through fraud, collusion, deceit or misrepresentation; provided you believe any such means were used?

*Thirteenth.* How much has been paid by plaintiff, R. Loggins, on this second deed of trust, and to whom and when?

*Fourteenth.* Is the land in controversy, or any part thereof, the homestead of R. T. Loggins? Is he the owner of said land? Has he ever lived upon the land? and if yea, has he acquired a homestead elsewhere? Has he ever set aside and designated said land as his homestead?

The above questions will be answered by you on the preponderance of evidence — in this way civil cases are determined. You are to determine the weight to be attached to the testimony of witnesses. Nine of your number may find and return answers to the above questions; but if in answer to any of the issues presented, a less number than twelve should agree, then the answer must be signed by the nine or more and less than twelve agreeing.

The jury returned the following verdict:

Question 1st. Yes.

Question 2d. Yes.

Question 3d. Yes.

Question 4th. Yes, to the extent of ten thousand dollars ($10,000).

Question 5th. We believe that the property covered by the first deed was sufficient, under proper management, to pay the indebtedness for which it was pledged. We believe Cannon & Co. did receive sufficient assets to cover said amount. We believe that the property was worth at the time Cannon & Co.

took charge of same, $11,537.75, and we believe that amount might have been appropriated to the payment of the trust deed. We also find an excess of $1,537.75 after satisfying the first deed.

Question 6th.   E. P. Alsbury; and it was for the benefit of Cannon & Co.

Question 7th.   Leon & H. Blum.

Question 8th.   On the 15th day of February, 1872.

Question 9th.   No.

Question 10th.   We do not believe there was any intention of fraud.

Question 11th.   Yes; transferred to Sylvain Blum on the 15th of February, 1872, for the account and benefit of Leon & H. Blum. We believe that it was made for the purpose of liquidating an antecedent indebtedness of Cannon & Co.

Question 12th.   Before it was due.

Question 13th.   To Sylvain Blum, for account and benefit of L. & H. Blum. We do not believe that the person to whom the same was assigned was aware of any fraud. We find that R. Loggins did pay Messrs. Leon & H. Blum, on the 4th day of December, 1872, three thousand dollars on the second deed of trust, and the said Leon & H. Blum were not entitled to the $3,000 as coming from Loggins.

Question 14th.   We do not.   He is the owner.   He has never lived on said land.   He has acquired a homestead elsewhere.   We believe not.

Thereupon the court decreed the cancellation of the note and trust deed of February 2, 1872, and gave judgment in favor of Reuben Loggins against Leander Cannon for $1,537.75, and in favor of the plaintiffs against Leander Cannon and Leon & H. Blum for the costs, and discharged the other defendants with their costs.

Motion for new trial was made and overruled.

Motion was also made by Sylvain Blum and Leon & H. Blum to reform the judgment upon the verdict in their favor, which was also overruled.

*Scott & Levi* for plaintiff in error.

I. The answer negatived all the material allegations of the bill, and the injunction should have been dissolved. Fulgham *v.* Chevallier, 10 Tex., 519; Hansborough *v.* Towns, 1 Tex., 59; Herron *v.* De Bard, 28 Tex., 604.

II. The giving by Reuben Loggins and acceptance by Cannon & Co. of the negotiable note of February 2, 1872, for an existing debt, operated either as payment of the original debt or as a suspension of the right of action on the original debt until the paper should have matured, according to the intention of the parties; and when R. T. Loggins, a third party, joins as obligor in such paper, the presumption that it is intended to extinguish the original debt is greatly strengthened. In any of these aspects, the paper so given is based upon valuable consideration, and it is binding upon all parties to it, though one or more of them were not parties to the original debt. Rose *v.* Railroad, 31 Tex., 60; 2 Daniell on Negotiable Instruments, §§ 1259, 1260, 1261, 1262, 1272, 1273; Violett *v.* Patton, 5 Cranch, 142; Yeaton *v.* Bank of Alexandria, id., 49.

III. Sylvain Blum, as legal holder of the note and entitled under the last preceding proposition to such judgment as Leon & H. Blum might have recovered against plaintiffs, is entitled to judgment upon the note upon the findings of the jury, under the rule that "a purchaser or holder of a negotiable instrument who has taken it *bona fide*, for valuable consideration, in the ordinary course of business, when it was not over due, without notice of its dishonor, and without notice of facts which impeach its validity as between antecedent parties, has a title unaffected by those facts and may recover on the instrument, although it may be without any legal validity as between the antecedent parties." Pasch. Dig., art. 221; 2 Daniell on Negotiable Instruments, 576, § 769. See, also, Texas decisions referred to in last proposition.

IV. The mere possession, by Sylvain Blum, of the negotiable note of February 2, 1872, produced in evidence by him, imported *prima facie* all the facts enumerated in the

last preceding proposition as entitling him to recover; nor is the burden of proof shifted by proof of any defense as between prior parties, except only if the instrument originated in a fraudulent or illegal transaction, when, and when only, would he be required to show by further proof the facts which entitle to recover, outside of the naked possession of the instrument. The statute (Pasch. Dig., art. 221) does not change this rule. Johnson *v.* Mitchell, 50 Tex., 212; McAlpin *v.* Finch, 18 Tex., 834; Watson *v.* Flannagan, 14 Tex., 355; Ross *v.* Smith, 19 Tex., 172; Grenaux *v.* Wheeler, 6 Tex., 526; 1 Daniell on Negotiable Instruments, 610, §§ 812, 813, 814, 815; Story on Promissory Notes, §§ 194, 195, 196, 197.

V. Within the meaning of the terms "*bona fide* holder for valuable consideration in the ordinary course of business," are included not only those who have advanced money or other values for negotiable paper, but also those who have taken it for an antecedent indebtedness, or have a lien upon it, or have taken it as collateral security, whether for an antecedent, contemporaneous or future indebtedness, and Sylvain Blum's rights are none the less, if, as found by the jury, he acquired the note of February 2, 1872, in consideration of an antecedent debt. Rawles *v.* Perkey, 50 Tex., 316; Grenaux *v.* Wheeler, 6 Tex., 523–528; Swift *v.* Tyson, 16 Pet., 1; Story on Promissory Notes, § 195; 1 Daniell on Negotiable Instruments, § 184; Carr *v.* Rawland, 14 Tex., 595.

*Harris & Elliott* also for plaintiff in error.

*Breedlove & Ewing* for defendants in error.

I. If it be conceded that a note or bill taken in satisfaction and discharge of a precedent debt, puts the indorsee in the situation of an innocent holder for value, and this is all that is decided in the cases cited by plaintiffs in error; yet it seems from the authorities, that a party receiving negotiable paper as additional or collateral security for a debt, is not so favorably regarded, and takes such paper subject to all the equities sub-

sisting between the maker and indorser. Smith v. Babcock, 2 Moody & Minot, 246; Rix v. Adams, 9 Vt., 213; Petrie v. Clark, 11 S. & R., 377; Kirkpatrick v. Muirhead, 4 Har., 117; Bramhall v. Buckett, 31 Me., 205; Bertrand v. Barkman, 3 Ark. 150; Williams v. Little, 11 N. H., 66; Prentice v. Zane, 2 Grat., 262; Bank v. Hale, 6 Ala., 63; Andrews v. McCoy, 8 Ala., 120; Sargent v. Sargent, 11 Vt., 371; Wormly v. Lowry, 1 Humph., 468; Ingram v. Varden, 3 Humph., 37; Farrington v. Frankfort Bank, 24 Barb., 554; Webster v. Von Steinburgh, 46 Barb., 412; Merchants' Bank v. Comstock, 55 N. Y., 27.

II. The taking of a negotiable instrument for a precedent debt will not extinguish the debt, unless it is expressly agreed that it is received as payment; and this fact must be proved by the party relying upon it. James v. Harkley, 16 Johns., 273; Hart v. Baillie, 16 S. & R., 162; Herring v. Sanger, 3 Johns. Cas., 71; Peters v. Beverly, 16 Johns., 532, 568; 2 American Leading Cases, 242, 243.

III. We insist that the liberal rules which for the safety of commercial transactions have been adopted in reference to the transfer of negotiable paper, are not applicable to cases like the present involving real estate. For while the mortgage is an incident of the debt, the benefit of which, so far as the assignor is concerned, passes with it, the assignee cannot rely on the privileged character of the note to insure to him the advantage of the mortgage. Johnson v. Carpenter, 7 Minn., 183; Walker v. Dement, 42 Ill., 278; Heller v. Weis, 2 Cin. (Ohio), 287.

IV. The doctrine that the purchase money must be actually paid, and that an antecedent indebtedness will not suffice to support the claim of innocent purchaser of land, seems to be settled in this state. Beatty v. Whitaker, 23 Tex., 528; Ayres v. Duprey, 27 Tex., 593; Orme v. Roberts, 33 Tex., 773; Farley v. McAlister, 39 Tex., 603; Blankenship v. Douglass, 26 Tex., 225. And we submit that the reasons for this rule are no more cogent in cases where the title is directly involved, than in those in which the same object is sought by other means.

This very question was fully considered and expressly decided in the case of Spurlock v. Sullivan, 36 Tex., 511. The court say: "But the mortgage to Sullivan was given to secure the payment of a pre-existing debt, and was not therefore made for a valuable consideration paid. The consideration may have been sufficient as between the parties, but was inadequate to shut out the claim of prior equities, though that claim of prior equities may have been wholly unknown to the mortgagee." Richardson v. Rice, Tenn. Sup. Ct., 1878; Hill v. Gray, Ind. Sup. Ct., 1877; Smith v. Bailey, 14 Ohio St., 396; Bouligny v. Fortier, 17 La. Ann., 121; Olds v. Cummings, 31 Ill., 188; Cumberland Coal & Iron Co. v. Parish, 42 Md., 598; Gliddon v. Hunt, 24 Pick., 221; Clark v. Flint, 22 Pick., 231.

MOORE, CHIEF JUSTICE. — The defendants in error, R. & T. R. Loggins, instituted this suit by injunction to restrain the sale of a tract of land under a deed of trust executed by them on the 2d of February, 1872, to E. Blanc, as trustee, to secure the payment of a note of ten thousand dollars, executed at the same time by defendants, and payable to Leander Cannon, under the firm name of Cannon & Co., or order, on the 1st day of December, 1872, and to cancel said deed and note, which note had been before due transferred or ordered to be paid by Cannon & Co., to the plaintiff in error, Sylvain Blum, a member of the mercantile firm of Leon & H. Blum.

To entitle the defendants in error to the relief prayed for in their original and amended petitions, and decreed them by the judgment against Sylvain Blum, or against the firm of Leon & H. Blum, if said note was transferred to him in payment of an indebtedness of Cannon to said firm, as defendants in error allege, it is necessary to connect them with, or show that they were cognizant of, parties to, or in some way chargeable with the alleged fraud practiced upon defendants in error by Cannon or his agent, in procuring said deed of trust and note, or with the agreement to first exhaust the assets turned over by R. Loggins to Cannon or his agent to pay said note,

and which it is charged was, by the agreement upon which T. R. Loggins signed the deed, to be applied to the payment of the note before the deed was to be enforced.

The jury by their responses to the special issues submitted to them by the court (no general verdict was asked or returned by them), say that there was no fraudulent combination, devices or representations on the part of Cannon towards the defendants in error, in securing the execution of the deed of trust, and that none of the defendants in the court below were cognizant of any such fraud; that at the time of the transfer of said deed and note, neither Sylvain Blum, nor the firm of Leon & H. Blum, were aware that there were any promises, agreements or understandings between Cannon or his representatives and defendants in error; that the property covered by the previous deed of trust should be exhausted before the second deed of trust should be resorted to; that the note and deed of trust was assigned to Sylvain Blum for the account and benefit of Leon & H. Blum on the 15th of February, 1872 (which was only thirteen days after they were executed, and more than nine months before the note became due). And again, that neither Sylvain Blum nor Leon & H. Blum was aware, or had reason to believe, that said deed of trust was procured through fraud, collusion, deceit or misrepresentation.

It is therefore evident that the judgment against the Blums could not have been rendered upon any supposed fraud on their part in procuring the deed. And as the jury find that but $3,000 had been paid by Loggins on the note, and in no way connect them with the assets alleged to have been turned over to Cannon or his agent subsequently to the transfer of the note and deed to Sylvain Blum, if the judgment can be maintained, it must be done on the finding of the jury that said deed and note were transferred to Sylvain Blum for account and benefit of Leon & H. Blum, for the purpose of liquidating an antecedent indebtedness of Cannon to them.

If the legal effect of this finding is, that any valid defense

which defendants in error would have against Cannon, if the note was still in his hands, may be asserted against the Blums, notwithstanding the transfer of them before it was due, in view of the finding of the special issues as to Cannon & Co., the judgment may. be correct.   But is this the legal effect of this verdict?   We think not.

It is laid down in a recent work of the highest authority on negotiable instruments, in strict accord as we think with the adjudged cases, that. " mere possession of a negotiable instrument produced in evidence by the indorsee or assignee when no indorsement is necessary, imports *prima facie* that he acquired it *bona fide* for full value in the usual course of business before maturity, and without notice of any circumstance impeaching its validity," and that he, as the owner, is entitled to recover against the maker, notwithstanding there might be a good defense to the instrument against the payee.   To let in a defense by the maker against the assignee, the maker must first prove that there was fraud or illegality in the inception of the instrument, or show circumstances which raise a strong suspicion of fraud or illegality.   When this is done, it will devolve upon the holder to show that he " acquired the instrument *bona fide* for value in the usual course of business, while current, and under circumstances which create no presumption that he knew the facts which impeach its validity."   Daniell on Negotiable Instruments, §§ 812–815.

The Blums took the note before due, and therefore while current, before the delivery of the goods and accounts to Cannon, with which the note was to have been paid, and which the jury found were sufficient for its discharge without a resort to the deed, and without knowledge of this agreement, and, as we must conclude, under circumstances which create no presumption that they knew the facts relied upon to impeach its validity.   They took it "for the purpose of liquidating an antecedent indebtedness," which certainly is not out of the usual course of business, in the transfer and assignment of commercial paper.   And when taken for such a purpose, is it

not also taken *bona fide* for value? It is certainly so to the common understanding. And we believe it has been universally so held when the antecedent debt is released, paid, novated, or discharged by the transfer or assignment. (2 Danl. Neg. Inst., ch. 39, sec. 1; Hare & Wallace's notes to 2 Leading Cas. in Eq., 103 *et seq.)*

A contrary doctrine is sought to be maintained on the authority of the case of Ayres *v.* Duprey, 27 Tex., 593, and similar cases. That case decides an entirely different question from that now under consideration. The point there ruled was, that a credit entered upon an execution would not constitute the plaintiff a *bona fide* purchaser for a valuable consideration, under the registration laws. As nothing in fact was paid by the plaintiff, but a mere credit entered upon the execution, which could be set aside, if the land did not in fact belong to the defendant in execution, he would not acquire by such purchase a valid title, merely because the title to the land stood in the name of the defendant upon the record, though in fact and in truth he was neither in law or equity entitled to it.

When the question is in regard to the *bona fide* transfer for value in the due course of business of negotiable instruments, it is altogether different, as is plainly to be seen by the decisions of this court, both before and since the determination of the case of Ayres *v.* Duprey. (Grenaux *v.* Wheeler, 6 Tex., 526; Planters' Bank *v.* Evans, 36 Tex., 592.)

When a negotiable instrument is transferred before due and without notice, in such manner as to pass the legal title, whether this is done in payment of a present or pre-existing debt of the assignee, the holder is no doubt protected against defenses which would be available against the original payee. But although the holder may take the legal title, if he does this merely as the agent of the payee, by whom it has been indorsed to him, and has himself no interest in the paper, but merely authority to collect it and apply the proceeds to a debt due him, the maker may, it seems, avail himself against such holder of

any defense to which he would be entitled if sued directly by the indorser.   (1 Danl. Neg. Inst., 616–7.)

Applying these general principles to this case, it will clearly appear that the verdict of the jury does not warrant the judgment.   Indeed, it is with some hesitation that we are led to the conclusion that it is too indefinite and imperfect to warrant a judgment in favor of Sylvain Blum for the amount apparently due on the note.   There is no direct finding upon the note or as to its amount, but merely that $3,000 had been paid upon it December 4, 1872.   And there is nothing in the verdict from which we can infer the character or amount of the debts on account of which the note and deed were transferred, or whether the transfer was made for the purpose of vesting in Blum an interest in the note, or merely to enable him, as the agent of Cannon, to collect and pay the amount realized upon it in discharge of these antecedent debts.

A number of other questions are presented by the assignment, but as their decision is not deemed essential to the proper determination of the case on another trial, we consider it unnecessary to pass upon them.   It may, however, be proper to say that the equity of the petition seems to be fully met and denied by the sworn answers, and we see no good reason why the court should have overruled the motion to dissolve the injunction.   (Hansborough v. Towns, 1 Tex., 59; Fulghman v. Chevallier, 10 Tex.; 519.)

The judgment is reversed and cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 19, 1880.]