No. 8823.

WILLIAMS ET AL. *v.* STOLL.

:PROMISSORY NOTE.—*Commercial Paper.*—*Endorser and Endorsee.*—*Considera-tion.*—*Fraud.*—One who carelessly executes commercial paper, which he can not read, being deceived by the payee as to its character, and there-fore supposing it to be an instrument wholly different, when, by reason-able care, he might have ascertained the true contents of the paper, can not make defence as to the consideration, against an innocent holder for ,value, who received the paper by endorsement, before maturity.

From the Dearborn Circuit Court.

*D. H. Stapp* and *J. A. Parks,* for appellants.

MORRIS, C.—The appellants, as assignees, brought this suit against the appellee, on the following note :

"June 26, 1878.

" Three months after date, I promise to pay to the order of George Stoll, one hundred and ninety-two dollars, at the First National Bank, Lawrenceburgh, Indiana, value received, with interest at ten per cent. per annum, without any relief from valuation or appraisement laws. And I promise to pay all at-torney's fees and cost and charges for the collection of this note. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and non-payment of this note. The makers and endorsers of this note further .expressly agree that the payee or his assigns may extend the time of payment thereof, from time to time, indefinitely, as he or they may see fit, and receive interest in advance or oth-.erwise, from either the makers or endorsers, for any extension so made. GEORGE STOLL."

The note was alleged to have been endorsed by George Stoll to W. P. McCay, and by him endorsed before due, and for a valuable consideration, to the appellants, who aver that they are innocent holders of the note.

The appellee answered the complaint by a general denial, and he also answered it by a special paragraph, in which he alleged that he was a German by birth, who came to this coun-

try when forty-eight years of age; that he was, at the time the note is alleged to have been given, sixty-eight years old; that he could neither read nor write the English language, and spoke it very imperfectly; that, on the 26th day of June, 1878, two strange men, whom he had never seen before, came to his house, in Logan township, in Dearborn county, one having red hair and the other having dark hair; that he did not know their names; that, when the strangers came, he and his two sons were at work in the field; that they went to the house together; that the red-haired man said they wanted to appoint an agent in that neighborhood to sell family medicines, prepared by the "Western Medical Works," at Indianapolis, and that they wished to appoint him to act as agent, and put up posters and sell the medicines. He told the strangers that he could not act as agent; that he was old, and could not read nor write. The red-haired man then proposed that the appellee's son, Martin, should act as agent, and asked Martin how old he was, and was informed that he was a minor; that he then proposed that said Martin should act as agent for the sale of said medicines in the neighborhood; that they would give him a dollar and a half per day for his time spent in putting up posters to advertise the medicines, and a commission of twenty-five per cent. on sales made by him; but, as Martin was a minor, his father, the appellee, must sign the agreement for him to act as such agent; that the red-haired stranger stated to the appellee, that, if he accepted such agency for his son, he would not be required to pay any money unless his son, as such agent, made sales of said medicines, and that, if sales were made, he would only have to pay over the proceeds, less commissions and expenses, once in every three months to the First National Bank in Lawrenceburgh; that if no sales were made there would be nothing to pay; that the stranger who made these statements got the appellee's son, Martin, to go with the other stranger to the barn, under pretence of watering the horses, and then drew up the

papers, and stated to the appellee that the papers were simply to show that his son had accepted said agency, and that he was duly appointed agent of said company for the sale of said medicines, and that the money arising from such sales, after deducting commissions and expenses, should be paid into the First National Bank of Lawrenceburgh, at the end of every three months; that said papers did not require the appellee to pay any money, unless sales should be made; that thereupon, and upon such representations, he consented that Martin should act as such proposed agent; that he then signed two or three papers presented to him by said stranger; that if any of them was the note in suit he did not know it; that he signed said papers with the understanding that they related to said agency, and nothing else; that nothing was said at any time about a note, and that he would not have knowingly signed a note; that the strangers then left, and that he has not seen them since; that neither he nor his son ever received any of the medicines for sale; that, if his name is to the note, it was procured without his knowledge or consent, and by the false and fraudulent representations of the strangers.

Upon these facts the appellee demands judgment. Both paragraphs of the answer were verified.

The same facts stated in the special paragraph of the answer were set up by way of counter-claim, except that, in the counter-claim, the sons of the appellee are not stated to have been present at the time of the transaction. The counter-claim is verified.

The appellants demurred to the special paragraph of the answer and to the counter-claim. The court overruled the demurrers and the appellants excepted. The cause was tried by a jury; verdict and judgment for the appellee.

The rulings of the court upon the demurrers are assigned as errors.

The note sued on is commercial paper, and is governed by the law merchant. The appellants are alleged in the complaint to be innocent holders, for value. The note was, in

their hands, free from equities which the maker might have insisted upon as against any party having notice of such equities. It is very probable that the appellee was misled and imposed upon by the strangers to whom he delivered the note, but if, by his negligence or careless indifference to his own interests, he contributed to the imposition, or if, by the exercise of a prudent diligence and regard for his own rights, he might have protected himself, he should suffer rather than the innocent holder of his paper, carelessly issued by him.

It is not alleged in the special paragraph of the answer, that the sons of the appellee could not read and write the English language. The fair inference from the facts stated is, that Martin could do so. The appellee refused to accept the agency himself, mainly upon the ground that he could not read and write. He directed Martin to accept it, agreeing to sign the necessary papers, for the reason, we infer, that he could both read and write. It is stated, apparently by way of excuse, that one of the strangers had, under pretence of watering the horses, induced Martin to go with him to the barn, and that he was not, for this reason, actually present when the papers were executed. But, if at the barn, he was not so far away that he could not have been called. The men with whom the appellee was transacting the business were entire strangers to him; he knew nothing of them. He knew that he could not read. Common prudence would have suggested to the appellee, under the circumstances, the propriety of calling in his son and having him read the papers presented to him for execution. But this he did not do. Without asking the stranger even to read them, he blindly relied upon his statement as to their contents and meaning, and, as is not unfrequently the case, was deceived and imposed upon. He, and not the innocent holder of the note, must bear the consequence of his misplaced confidence. *Maxwell* v. *Morehart,* 66 Ind. 301 ; *Indiana National Bank* v. *Weckerly,* 67 Ind. 345.

We think the court below erred in overruling the demur-

rer to the first paragraph of the answer. As the counter-claim is substantially the same as the special paragraph of the answer, the demurrer to it should have been sustained.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the costs of the appellee.