FRANK J. MACKEY *vs.* THOMAS PETERSON.

July 17, 1882.

**Promissory Note—Signature Induced by Fraud—Negligence of Maker —Bona Fide Holder.**—Defendant signed a negotiable promissory note, supposing it to be merely a receipt for a plow. The agent of the payee presented it to him for signature, told him it was a receipt, and, at his request, assumed to read it to him. As so read, it was only a receipt. He believed the agent read it truly, and, so believing, he signed it; and he did not intend to sign and did not know he was signing a note. There was no one who could read English within half a mile of where it was signed. *Held*, that if in any case it was a defence to a negotiable promissory note in the hands of a *bona fide* holder that the maker executed it not knowing it to be and not intending to execute a note, but being fraudulently led to believe he was executing some other instrument, it can only be where he was guilty of no neglect of care to ascertain what he was signing. *Held*, that the defendant was, in so executing a note, guilty of such neglect of care; and the facts furnish no defence as against a *bona fide* holder.

Appeal by defendant from an order of the municipal court of Minneapolis, refusing a new trial. . The case is stated in the opinion.

*Ueland & Shores*, for appellant, cited *Walker* v. *Ebert*, 29 Wis. 194; *Kellogg* v. *Steiner*, 29 Wis. 626; *Griffiths* v. *Kellogg*, 39 Wis. 290; *Wait* v. *Pomeroy*, 20 Mich. 425; *Burson* v. *Huntington*, 21 Mich. 415; *Foster* v. *Mackinnon*, L. R. 4 C. P. 704; *Whitney* v. *Snyder*, 2 Lans. 477; *Fayette Co. Savings Bank* v. *Steffes*, 54 Iowa, 214.

*Koon, Merrill & Keith*, for respondent.

GILFILLAN, C. J.    Action on a negotiable promissory note, made by defendant, payable to the Light-Draft Plow Company, or bearer, and transferred before due to plaintiff.    On the trial the plaintiff proved that the note was transferred to him in the usual course of business, before due, for a valuable consideration, and that he had no notice of any defect in or defence to it.    The defendant, without offering any evidence that would tend to prove that plaintiff was not a *bona fide* holder, offered to prove that he signed the note supposing

it to be merely a receipt for a plow which the company had delivered to him to try; that the agent of the company presented the instrument to him for his signature, told him it was a receipt, and at his request read it to him; that as so read, it was a receipt and nothing else; that there was no one who could read English within half a mile of the place where it was signed; that he then ·believed the agent read it truly, and relied on such reading; that he signed the instrument supposing it to be a receipt and nothing else, and that he did not intend to sign, and did not know he was signing a note, and that he never signed any other instrument for said company. On plaintiff's objection this evidence was excluded, and the ruling excluding it is the only error here alleged.

The facts which defendant offered to prove·would avoid the note in the hands of the original payee. The question is, would they take the case out of the rule that a *bona fide* purchaser of negotiable paper, for value, and before maturity, takes it clear of all equities and defences on the part of the maker? ·The rule includes the defence that the maker was induced by false and fraudulent representations to execute the instrument. A distinction has lately been taken between a case where the maker of a note or bill is by fraud induced to sign and deliver it, not knowing it to be a note or bill, but supposing it to be some other instrument, and a case where he knows its character, but is induced to sign and deliver it by false and fraudulent representations as to the existence of other facts. In the former of these cases it has been held that the fraud is a defence against a *bona fide* holder. The leading case recognizing the distinction is *Foster* v. *Mackinnon*, L. R. 4 C. P. 704. Since that case the same has been held, with more or less rigorous qualifications, in New York, Michigan, Wisconsin, Illinois, and Nebraska.

It is unnecessary for us to determine whether there may not be cases where the defence that the maker was by fraud led to affix his signature to an instrument which he did not intend, under any state of facts, to execute, may be good against a *bona fide* holder; for all the cases admitting such defences hold that negligence by the maker in affixing his signature to a note or bill in ignorance of its character

will deprive him of this defence. They seem to differ only with respect to the degree of negligence requisite to have that effect.

In *Putnam* v. *Sullivan*, 4 Mass. 45, where the distinction we have stated was urged by counsel, the court said there might be cases in which it ought to prevail, "but we are satisfied that an indorser cannot avail himself of this distinction, but in cases where he is not chargeable with any laches or neglect, or misplaced confidence in others."

In *Douglass* v. *Matting*, 29 Iowa, 498, the facts did not differ essentially from those in this case, except that there it did not appear that there was no one present who could read English. The court held the facts were no defence, and used this language: "It is better that defendant and others who so carelessly affix their names to paper, the contents of which are unknown to them, should suffer from the fraud which their recklessness invites, than that the character of commercial paper should be impaired, and the business of the country thus interfered with and unsettled."

In *Chapman* v. *Rose*, 56 N. Y. 137, the trial court refused to charge, at the request of plaintiff, "that if defendant negligently, and without sufficient care and precaution, put his name to a paper and delivered it to Miller, he is liable for its amount as a promissory note." For this the court of appeals reversed the judgment. The opinion refers approvingly to *Putnam* v. *Sullivan* and *Douglass* v. *Matting*, as well as to *Foster* v. *Mackinnon*, and the New York case of *Whitney* v. *Snyder*, 2 Lans. 477, and says: "In all these cases the real ground of decision is not that the party meant to make a promissory note, but that, meaning to make an obligation in writing, and which was put in writing, that it might of itself import both the fact and the form and the measure of the obligation, he trusted another to fix that form and measure, without exercising that supervision which was in his power, and by which protection was possible. In such cases the rule is that he is bound by the act of him who has been trusted, in favor of a holder in good faith."

In *Foster* v. *Mackinnon*, the rule, as stated to the jury by the chief justice who tried the cause, contained the qualification that the defendant must not be guilty of any negligence in signing the paper.

In *Shirts* v. *Overjohn*, 60 Mo. 305, the rule was approved that any negligence on the part of the signer would hold him to the note.

In *Dinsmore* v. *Stimbert*, 12 Neb. 433, the trial court instructed the jury that the degree of care required to admit the defence was "the diligence and care that a man of ordinary care and prudence would have used under similar circumstances to ascertain its contents." The supreme court held this to be error, and said "that he should, in the language of *Byles*, J., (in *Foster* v. *Mackinnon*, above cited,) have been not guilty of any negligence in so signing the paper."

That case presents more pointedly than any we have met the question as to the degree of negligence which will exclude the defence in cases where it is conceded it would otherwise be admissible. If such a defence is to be admitted at all, the rule as to diligence thus laid down is the only one consistent with the protection due to commercial paper. Where a party, through neglect of precautions within his power, affixes his name to that kind of paper without knowing its character, the consequent loss ought not to be shifted from him to a *bona fide* purchaser of the paper. Tested by this rule, the facts which defendant offered to prove would have been no defence. He signed the paper voluntarily. He was under no controlling necessity to sign without taking such time as might be needed to inform himself of its character. If he could not read it himself, there was no reason, except, perhaps, his own convenience or haste, why he should not postpone signing until he could have it read by some person upon whom he had a right to rely. Instead of doing that, he chose to rely upon an entire stranger, and that stranger the party opposed to him in interest, and the only person under any temptation to deceive him as to the character of the paper he was asked to sign. One who, without any necessity, so misplaces his confidence, ought not to be heard to claim that the paper he is in consequence misled to sign should be taken out of the rule protecting commercial paper.

Order affirmed.