GARLITZ v. RUNNELS COUNTY NAT.
BANK.

(Court of Civil Appeals of Texas. Austin.
June 19, 1912. On Motion for Rehear-
ing, Dec. 4, 1912. Rehearing
Denied Jan. 15, 1913.)

1. TRIAL (§ 356*)—SPECIAL INTERROGATORIES
—NECESSITY OF ANSWERS.

It would be improper to render judgment
upon a verdict not answering special interroga-
tories, if they were material.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 849–854; Dec. Dig. § 356.*]

2. BILLS AND NOTES (§ 373*)—DEFENSES—
FRAUD.

By the weight of authority, the maker of a
negotiable instrument, procured through fraud
going to its inception, is liable to a bona fide
purchaser for value without notice, notwith-
standing the fraud.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 966–970; Dec. Dig. §
373.*]

On Motion for Rehearing.

3. BILLS AND NOTES (§ 373*)—BONA FIDE
PURCHASERS — DEFENSES — FRAUD — CON-
TRIBUTORY NEGLIGENCE.

Even if he could otherwise do so, to enable
one signing a $600 negotiable note under fraud-
ulent representations that it was for $100 to
defend on that ground against a bona fide pur-
chaser, the maker must, without negligence on
his own part, have believed, because of the
fraud, that he was signing a $100 note.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 966–970; Dec. Dig. §
373.*]

4. BILLS AND NOTES (§ 494*)—ACTION—BUR-
DEN OF PROOF—FRAUD.

The burden was on the maker, sued on a
$600 negotiable note by a bona fide purchaser,
to prove that the note was procured, without
negligence on his own part, by fraudulent rep-
resentation that it was only for $100.

[Ed. Note.—For other cases, see Bills and
Notes, Dec. Dig. § 494.*]

5. BILLS AND NOTES (§ 373*)—VALIDITY—CON-
TRIBUTORY NEGLIGENCE.

Though one who signed a $600 note, be-
lieving, because of fraudulent representations,
that it was only for $100, could not read or
write English, he was guilty of negligence pre-
cluding him from asserting fraud against a bona
fide purchaser, where he had been in the coun-
try for many years, could read and write Ger-
man, had transacted much business, and failed
to take advice before signing.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 966–970; Dec. Dig. §
373.*]

Appeal from District Court, Runnels Coun-
ty; John W. Goodwin, Judge.

Action by Runnels County National Bank
against F. Garlitz. From a judgment for
plaintiff, defendant appeals. Affirmed on re-
hearing.

H. William Bigler and W. D. Jennings,
both of Miles, for appellant. Stone & Wade,
of Ballinger, for appellee.

RICE, J. This suit was instituted by the
appellee against appellant alone to enforce
the collection of a note for the sum of $600,
payable to it, alleged to have been executed
by appellant and one W. S. Davis, Jr.; the

latter being at the time of the filing of this
suit without the jurisdiction of the court.
Appellant defended on the ground of a fail-
ure of consideration, and specially answered
under oath that his signature to said note
was obtained by fraud and false representa-
tions made to him by said Davis, the as-
sistant cashier of appellee, who, it is alleged,
acted for and in behalf of the bank in ob-
taining said signature. Appellee filed a sup-
plemental petition containing a general de-
murrer; and replied specially that, if said
Davis obtained appellant's signature to said
note through fraud and false representations,
he was acting for himself in obtaining said
note, and not for appellee, who acquired
same for value without notice before maturi-
ty. The case was submitted to the jury upon
special issues, two of which required the
jury to determine whether or not the note
was obtained by Davis through fraud, as al-
leged, to wit, questions 2 and 4. Question No.
2 was: "At the time the defendant signed
the $600 sued upon, did he know that it was
for $600?" No. 4: "Did W. S. Davis, Jr.,
represent to the defendant that the note sued
upon was for $600, and, if so, did the defend-
ant rely upon such representations, if any,
and was he induced thereby to sign said
note?" After retirement and consideration
of the case by the jury, they returned into
open court with answers to all of said ques-
tions except Nos. 2 and 4. Whereupon the
court called their attention to the fact that
said questions were unanswered, and sent
them back for further deliberation, after
which they again returned into court and in-
formed the court that they were divided
among themselves and could not agree to any
answer to said questions Nos. 2 and 4, as to
which they were hopelessly "hung." Where-
upon the court, with the consent of the par-
ties, discharged the jury, but entered judg-
ment for appellee, over the protest of appel-
lant, on the partial verdict so rendered. Ap-
pellant assigns error on the action of the
court in discharging the jury, and rendering
judgment upon such partial verdict, over his
protest, contending that the two issues which
were not answered were material to his de-
fense.

It is shown by the evidence that said Da-
vis was the assistant cashier of the bank,
and had been for several years prior to this
transaction. At the time of the execution of
the note appellant testified that Davis asked
him to sign a note for $100; that there was
no one in the bank at the time, and Davis
represented to him that the note was for
$100; that he was a German, unable to read
and write English; that he had confidence
in Davis, with whom it was shown that he
had had frequent business transactions, and
relied upon what he stated, believing his rep-
resentations to be true; that if he had
known the note was for $600 he would not

have signed it; that the signature to the note in question was his, but he was induced to sign the same under the belief that the note was only for $100.

[1] If questions 2 and 4, which were not answered, were material to the inquiry under investigation, then it was improper for the court under the circumstances to have rendered a judgment upon a verdict not answering them. See Paschal v. Acklin, 27 Tex. 173; Moore v. Moore, 67 Tex. 293, 3 S. W. 284; Newbolt v. Lancaster, 83 Tex. 271, 18 S. W. 740; Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391; Mabry v. Citizens' Lumber Co., 47 Tex. Civ. App. 443, 105 S. W. 1156. In the case of Moore v. Moore, supra, Judge Gaines, in rendering the opinion, said: "It is the right of the parties to have the jury pass upon all the facts controverted by the pleadings, and when they have omitted to do this, however clear and undisputed the evidence upon the issues not found, the court cannot render judgment without usurping, in part, the functions of the jury, and thereby infringing a right guaranteed by the Constitution and laws." We think, however, that if these questions were immaterial then, notwithstanding the same may have been incorporated in the charge, the court had the right to accept the verdict rendered disregarding such questions; so that the question for our determination is whether or not said questions presented a material inquiry, and should have been answered by the jury. If the testimony of appellant is true (and this was a matter for the sole determination of the jury), then it seems that the note was procured by fraud and was not in fact his note.

[2] In 8 Cyc. p. 38, it is said: "While fraud in procuring the execution of an instrument may, of course, be shown between the original parties or parties with notice, it is a rule adopted for the protection of negotiable instruments in general, that the maker, indorser, or acceptor of a negotiable instrument procured through fraud may be held liable to a purchaser for value before maturity without notice, and he will not be allowed to set up the defense of fraud to relieve himself of such liability." This rule, however, is not without its limitations, and the same author says: "In some of the states fraud or circumvention in obtaining a note is a good defense, even as against a bona fide holder, where there has been no culpable negligence on the part of the maker. This on the ground that the note is illegal in its inception, and is not the note or act of the party sought to be charged." In note 38, same volume, page 40, it is said: "An instrument in the form of a negotiable promissory note signed by a person under circumstances devoid of any negligence on his part and delivered by him in ignorance of its true character and by means of fraud will be regarded as a forgery, and cannot be enforced,

even in the hands of a bona fide purchaser" —citing, in support thereof, Green v. Wilkie, 98 Iowa, 74, 66 N. W. 1046, 36 L. R. A. 434, 60 Am. St. Rep. 184. See, also, Griffiths v. Kellogg, 39 Wis. 290, 20 Am. Rep. 48.

In Green v. Wilke, supra, a case in which the facts were somewhat similar to those of the present, it is said: "There are numerous cases in which parties intending to sign a contract have, through fraudulent representations, placed their signatures to negotiable instruments which have fallen into the hands of innocent purchasers. There is a very respectable line of authorities holding that, in the absence of negligence, the maker of such instrument is protected." Further it is said, the writer quoting from Chipman v. Tucker, 38 Wis. 43, 20 Am. Rep. 1: "The inquiry in such cases goes back of all questions of negotiability, or of the transfer of the supposed paper to a purchaser for value, before maturity, and without notice. It challenges the origin or existence of the paper itself, and the proposition is to show that it is not, in fact or in law, what it purports to be, namely, the promissory note of the proposed maker." The court says: "The facts of this case come within the rule of the Wisconsin cases, and do not contravene any rule announced in our own state. The defendant was an illiterate man, who could not read nor write, except that he could barely write his own name." The court holding, as stated in the syllabus, that the illiterate maker of a note and mortgage for $1,000, who was fraudulently induced to sign them, supposing that he was signing a lease and a note for $100 to a different payee, is not liable on the note, even when it is in the hands of an innocent purchaser, unless he was guilty of negligence in making it, since he was never a party to such contract.

In Griffiths v. Kellogg, supra, it is said: "Where an instrument in the form of a negotiable promissory note of the defendant was not voluntarily made by her, but her signature was procured by the fraud practiced upon her under pretense of getting her to sign a different note for a less sum, it was not her note, and she is not liable upon it, even to an innocent holder." The same doctrine has been held in Stacy v. Ross, 27 Tex. 3, 84 Am. Dec. 604. See, also, 2 Rose's Notes, p. 89.

For a more full discussion of the rule and its application to particular cases, see Daniel on Negotiable Instruments, vol. 1, § 847, p. 859 et seq. After full consideration we are of the opinion that the defense presented by appellant's plea, and which was embraced in issues Nos. 2 and 4, should have been passed upon by the jury, and that the court erred in rendering judgment on such partial verdict; and this, we think, is so irrespective of whether Davis, the payee therein, at the time of the execution of the note, was representing himself or the bank; be-

cause, if appellants' defense is true, the fraud shown in obtaining it went to the very heart of the transaction, and rendered the note fraudulent and void from its inception; and this defense should prevail, if there was no negligence upon the part of the maker in executing the same, even against an innocent holder for value without notice under such circumstances. While we recognize the doctrine announced in the case of National Bank v. Carper, 28 Tex. Civ. App. 334, 67 S. W. 188, and other cases cited by appellant in support thereof, still we do not think the same is applicable here.

For the reasons above indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellee has filed an elaborate motion for rehearing, supported by copious extracts from authorities, to the effect that the doctrine enunciated in the original opinion is not the law in this state, but that the rule that governs here is that contained in the following extract from 8 Cyc. p. 38, that: "While fraud in procuring the execution of an instrument may, of course, be shown between the original parties, or parties with notice, it is a rule adopted for the protection of negotiable instruments in general that the maker, indorser, or acceptor of a negotiable instrument procured through fraud may be held liable to a purchaser for value before maturity without notice; and he will not be allowed to set up the defense of fraud to relieve himself of such liability"— citing, in support of this contention, Watson v. Flanagan, 14 Tex. 354; Blum v. Loggins, 53 Tex. 121; New v. Walker, 108 Ind. 365, 9 N. E. 386, 58 Am. Rep. 40; Texas Banking & Ins. Co. v. Turnley, 61 Tex. 365; Thompson v. Samuels (Sup.) 14 S. W. 143; Worsham v. State, 56 Tex. Cr. R. 253, 120 S. W. 439, 18 Ann. Cas. 134; State Bank v. Holland, 103 Tex. 266, 126 S. W. 564; Barnes v. McCarthy, 132 S. W. 85; Bank v. Cruger, 91 Tex. 446, 44 S. W. 278; Id., 44 S. W. 1057; Allen v. Garrison, 92 Tex. 546, 50 S. W. 335; Riley v. Reifert, 32 S. W. 185; Harfst v. State Bank, 56 Tex. Civ. App. 31, 119 S. W. 694. The last two cases seem to be in point and sustain his contention.

In discussing this question in Green v. Wilkie, 98 Iowa, 74, 66 N. W. 1046, 36 L. R. A. 434, 60 Am. St. Rep. 184, it is said: "There is something of a hopeless conflict of authorities touching the liability of persons whose names appear to negotiable paper, through fraudulent means, and the paper is in the hands of innocent holders. It would be useless to attempt a reconciliation of them. There are numerous cases in which parties intending to sign a contract have, through fraudulent misrepresentation, placed their signatures to negotiable instruments which have fallen into the hands of innocent purchasers. There is a very respectable line of authorities holding that, in the absence of negligence, the maker of such an instrument is protected."

[3] We are inclined to believe that the weight of authority is with the contention urged by appellant and is sufficient reason for us to reverse our former holding; but, be that as it may, the motion in the present case should be granted, because, even if the law is as held in the cases cited in the original opinion, then appellant has not made out his defense, for the reason that each of said cases showed that, in order for him to have defended against the payment of the note, three separate and distinct things must have been shown by him: First, he must have signed the note under the belief that the same was for $100; and, second, he must have been induced to do so by the fraudulent representations of the appellee; and, third, that he was guilty of no negligence in doing so. An inspection of the record discloses that the only defense urged here is that he was illiterate, signed the note, believing the same was for $100, when in fact it was for $600, and that he was induced to do so on account of the fraudulent statement and misrepresentation of the defendant; but there is no allegation showing, or tending to show, that he was not negligent in doing so, or that he exercised any diligence to ascertain the truth of such representations before signing same.

[4] The burden of proof was upon him to show each element of this defense.

[5] It is true, the evidence discloses that he could not read or write the English language; but it appeared that he had been in this country for many years, and had many business transactions, and could read and write German. And while the note was signed in the bank, and no one else was shown to have been present except appellant and Davis, it would have been an easy matter for appellant to have consulted some one with reference to it. This he failed to do, and in so failing, in our judgment, was guilty of such negligence as defeated his right to defend against the note in the hands of an innocent purchaser, who took the same without notice, for value, in due course of trade.

In 1 Daniel on Negotiable Instruments, § 836, it is said: "There are numerous cases in which the line of demarcation between the fraud which does not affect the bona fide holder for value and without notice, and that which utterly vitiates the instrument in all hands whatsoever, is narrow and difficult to distinguish. The distinctions taken are frequently very refined and metaphysical; but the test questions to be applied, we think, are these: (1) Has the party sought to be charged created an agency or trust by means of which the fraud has been com-

mitted? (2) Has he deliberately given the appearance of validity to the instrument? (3) Has he committed negligence respecting it, by means of which an opportunity for the fraud has been created? And whenever either of these questions can be answered affirmatively upon a fair consideration of all the circumstances of the case, the balance of equity is in favor of the bona fide holder for value and without notice; the axiomatic principle of law then applying that, where one of two innocent persons must suffer, the one who creates the trust or does the act from which the loss results must bear it."

In an elaborate note to Green v. Wilkie, supra, the question of what is negligence and its legal effect upon the party making a similar defense to the one here is fully discussed and seems to be generally held that, where an illiterate person has been imposed upon and caused to execute a promissory note for a greater amount than he intended, his failure to make inquiry from others, where this can conveniently be done, will prevent a successful defense to said note, where the same has passed into the hands of an innocent holder for value, without notice.

In Mackey v. Peterson, 29 Minn. 298, 13 N. W. 132, 43 Am. Rep. 211, it is said: "If a person signs a paper voluntarily while under no controlling necessity to sign, without taking time to inform himself of its character, but relies on the opposite party to the contract for information respecting it, he misplaces his confidence and will not be heard to say that he was, in consequence, misled to sign, so as to take himself out of the general rule governing commercial paper." Again, in Fisher v. Von Behren, 70 Ind. 19, 36 Am. Rep. 162, it is held that, although the maker is not able to read or write, yet, if he signs the paper without any attempt to learn its contents he will be guilty of negligence which will preclude his defense of fraud.

In Williams v. Stoll, 79 Ind. 80, 41 Am. Rep. 60, it was held that if the maker of a note, who was unable to read or write, signs the same without asking his son, who was present and who could read, to read it to him, he will be liable on the note because of his negligence, although the character of it was fraudulently · misrepresented to him. Again, if the maker who signs a note under false representations inducing his signature fails to use ordinary diligence to ascertain the truth as to the paper he is signing, he cannot defend against an innocent holder for value. See, also, section 847, vol. 1, Daniel on Negotiable Instruments, and also note 31 under section 849a, Id.

For the reason that appellant failed to exercise any diligence to ascertain the truth of the matter represented to him by appellee, he is precluded, we think, from setting up this defense as against the bank, who appears from the evidence to be an innocent holder for value, in due course, without notice of the alleged fraud. For which reason, as well as the additional reason that the weight of authority seems to be that, under such circumstances, the defendant could not resist the payment of the note, we think the motion is well taken and should be granted. The issues presented by questions 2 and 4, under either view, became immaterial; and we were in error in holding to the contrary.

The motion for rehearing is therefore granted, and the judgment of the court below is, in all things, affirmed.

Motion granted. Judgment below affirmed.