AUGUST KALZ v. WINONA & ST. PETER RAILWAY COMPANY.

May 22, 1899.

Nos. 11,594, 11,595—(74, 77).

Motion for Judgment notwithstanding Verdict—Denial of Judgment—Appeal.

Where, in accordance with the provisions of Laws 1895, c. 320, either party has moved the trial court to direct a verdict in his favor, which motion has been denied, and thereafter moves the court that judgment be entered in his favor notwithstanding a verdict against him, or for a new trial, and the court denies the motion for judgment, but grants (or denies) the motion for a new trial, the moving party may appeal from the order as a whole, and have reviewed in this court that part which denied his motion for judgment.

Death by Wrongful Act—Fire upon Right of Way—Verdict.

Held, in an action brought to recover damages on account of the fatal burning of plaintiff's intestate, his infant daughter, by means of a fire which had been set upon defendant's right of way for the purpose of consuming the withered grass thereon, that the trial court erred when, at the close of the evidence, it refused to direct a verdict in favor of defendant in accordance with the motion made by its counsel, and also erred when it denied the subsequent motion for judgment.

Action in the district court for Brown county by the administrator of the estate of Clara Kalz, deceased, to recover $5,000 damages on account of the death of decedent. The case was tried before Webber, J., and a jury, which rendered a verdict in favor of plaintiff for $1,250. Upon defendant's alternative motion for judgment notwithstanding the verdict or for a new trial, the court made an order denying judgment and granting a new trial. From this order

defendant appealed, and plaintiff appealed therefrom so far as it granted a new trial.    Reversed.

*Jos. A. Eckstein*, for plaintiff appellant.

*Brown & Abbott*, for defendant appellant.

COLLINS, J.

Cross appeals in an action brought to recover damages on account of the fatal burning of plaintiff's intestate, his daughter, aged three and one-half years, her clothing having caught fire from a fire set upon defendant's right of way for the purpose of consuming the withered grass and other rubbish which had accumulated thereon.    The plaintiff had a verdict, and upon a settled case defendant's counsel made the alternative motion provided for in Laws 1895, c. 320.    In its subsequent order the court below denied the motion in so far as it related to ordering judgment in defendant's favor, but it granted a new trial, whereupon plaintiff's counsel appealed from that part of the order last referred to, while counsel for defendant appealed from the entire order.

It has been suggested that, as defendant prevailed in so far as it moved for a new trial, the order is not appealable as a whole. Although chapter 320 has often been under consideration in this court, the exact question presented by this suggestion has never been before us.    In St. Anthony Falls Bank v. Graham, 67 Minn. 318, 69 N. W. 1077, the plaintiff's alternative motion in the court below was disposed of precisely as was defendant's in the case at bar.    It was held that plaintiff could not appeal from that part of the order which denied the motion for judgment notwithstanding the verdict.    In Oelschlegel v. Chicago G. W. Ry. Co., 71 Minn. 50, 73 N. W. 631, the motion was, upon a settled case, to set aside the verdict, and for judgment notwithstanding the verdict, and it was held that no appeal would lie from an order denying the motion.    In the recent case of Savings Bank of St. Paul v. St. Paul Plow Co., supra, page 7, it was held that an order denying a motion that a trial court change its conclusions of law, and for judgment notwithstanding such conclusions, is not appealable.

The statute (chapter 320, supra) expressly provides that on appeal from an order granting or denying a motion for a new trial

in an action in which a motion has been made at the trial, by either party, to direct a verdict, this court may order judgment to be entered in favor of the party who moved for such verdict, if it appears from the testimony that he was entitled thereto. This portion of the 1895 act certainly confers on the party whose motion for a directed verdict is wrongfully denied, and who thereafter makes the blended motion provided for, the right to have the question covered by his motion reviewed on appeal from an order granting or denying a new trial, and to secure an entry of the proper judgment. The construction we have placed on the statute is the only one which will protect the moving party, and give him an opportunity to have reviewed the rulings of the trial court when it refuses to direct a verdict, and then denies that part of the blended motion based on such refusal. The moving party may appeal from the whole order, although his motion has been granted in part; and on such appeal this court will review the action of the court below denying the motion for judgment.

From the evidence produced at the trial it appeared that on the day of the casualty one of defendant's section foremen set a fire on the right of way south of the track several hundred feet east of a point opposite to where the child was found shortly after it had been burned. The strip to be burned was but a few feet in width. There was not much material on the ground to be consumed, and at places it was necessary to scatter hay that the rubbish might be cleaned off. On the south line of this right of way was a substantial wire fence, and south or outside of this fence was open common upon which the town cattle had grazed all summer. It was undisputed that outside the fence the grass had been eaten so closely by the cattle that there was nothing to burn except little skirtings about the fence posts,—a few blades, which had grown so closely to the posts that they were beyond the reach of the grazing animals. Between the posts the line of combustible material was irregular, for in places the cattle had been able to get their heads under the lower wire, and thus feed a very little on the right of way. The fire burned in a westerly direction, and was confined to the right of way practically, there being no fuel for it outside. Taking the first 100 feet east of where the child was

76 M.—23

found, the fire had spread outside of the fence three or four times from a fraction of an inch up to six inches. East thereof forty or fifty feet it had gone outside twelve inches at two different places. About 4 p. m. it appeared to have died out entirely, and the section men paid no more attention to it.

The plaintiff's daughter, her brother Gustav, aged eight years, John Douth, aged six years, and a Lessner boy, had been playing in the plaintiff's yard that afternoon, which yard was a trifle over 100 feet from defendant's right of way, and evidently had not been absent more than an hour, when plaintiff's son ran to the house with the information that the little girl's clothing was on fire. She was found at the point before mentioned, about thirty feet from the west end of the tract which had been burned over, outside the right of way, and towards plaintiff's house. No one but these children saw the little girl when her clothing took fire, and they alone knew where she was at the time. The plaintiff's claim at the trial was that she was not inside the fence, while defendant contended that she went through the fence with the other children, then pulled dry grass, and fed the smouldering fire until it blazed up and ignited her dress; that she was then helped through the fence by her comrades, and ran, towards home, to the point where she was found as before stated. Whether the child was inside or outside of the fence when her clothing caught fire was made the prominent question at the trial. It was specially submitted to the jury, and on this the finding was that she was not inside, nor was she on defendant's right of way at the time mentioned.

It is insisted by plaintiff's counsel that the weight of the evidence was manifestly and palpably in favor of the general verdict, and also that the evidence bearing upon the vital question of the whereabouts of the child was manifestly and palpably in favor of the special finding, and therefore that it was error for the trial court to set aside the verdict, and grant a new trial. Upon the other hand, defendant's counsel strenuously urge that the evidence produced was conclusive in defendant's favor, and that the court erred in not directing a general verdict for defendant upon their motion so to do at the close of the testimony.

We have called attention to the fact that the circumstances im-

mediately connected with the firing of the child's clothing were wholly within the knowledge of her young playmates, one of them being John Douth, aged six years. This boy was called as a witness by defendant. He could not talk English, and his father was sworn as an interpreter. Counsel then attempted to lay a proper foundation for introducing the testimony of a child of such tender years, and was unsuccessful. After a while counsel again attempted to show that he was capable of appreciating the obligation of an oath, the same interpreter being used, and again the court held that his competency had not been established. Later the child was again called, with another interpreter, who seems to have been more capable, and the preliminary examination was much more satisfactory and convincing. From this examination counsel passed on to questioning the boy as to what transpired when he, with the other children, left the plaintiff's yard, and went down to the wire fence along the right of way. A number of questions had been propounded and answers given, when plaintiff's counsel asked if the court held the witness to be competent, and then added, "I don't care to object if the court thinks he is." No objection was made and no ruling demanded on this question of competency, and in its charge the court called attention to the youthfulness of the witness, and the weight which ought to be given to his testimony. From a very careful examination of that part of the record in which is found the direct and cross-examination of this young lad, we are of the opinion that he was very intelligent for a boy of that age. There was nothing in his testimony which indicated in the least that he had been prompted, or that he was not telling in a simple, boyish way the exact facts; and plaintiff's counsel was not able to confuse him on cross-examination, or to secure any different story. In fact, the cross-examination served to strengthen the story as originally told.

The evidence strongly supported the contention of counsel as to the manner in which the children reached the fire, and the witness was positive that the little girl was inside of the fence, with the other children, when her clothing took fire. As tending to corroborate this, one Heidemann, an adult, testified without objection that a few days after the accident he went with Mrs. Kalz, the

mother of the deceased child, her son Gustav, before mentioned as eight years of age, Mrs. Douth, and her boy John, the young witness whose testimony we have considered, from plaintiff's house down to the fence, the Douth boy leading the way. There the latter and young Kalz showed Heidemann and their mothers where and how the children went through the fence onto the right of way, where the little girl was when the fire got into her clothes, about three feet from the fence on the right of way, and about opposite the place where she lay when found, and the manner in which she was afterwards helped back through the fence by the two boys. No attempt was made on the part of plaintiff to contradict Heidemann in any way; nor was Gustav Kalz, plaintiff's son, called to give his version of what occurred when his sister was burned. There was another corroborating circumstance. Mrs. Douth testified that when she ran from her own house to where the child lay on the ground she found shreds of its clothing hanging to the barbs on the fence wire at the point where she went through after her clothing was on fire, according to the statement of the other children. As against the testimony of the Douth boy and of Mr. Heidemann and the circumstance above mentioned, there was no evidence whatever. The plaintiff's case simply stood with the testimony that the child was burned, that she was found about thirty feet outside the fence, that about the time there was a small fire in the dry grass at the west end of the narrow burned strip on defendant's right of way, and that at places along the fence for 100 feet easterly the fire had during the afternoon encroached slightly upon the common before mentioned.

If the verdict in this case depended wholly or entirely upon the evidence as to defendant's negligence, we are not convinced that on the facts defendant could be held to have been negligent at all. It was defendant's right and duty to burn over the ground inside its fence, if it did so in a reasonable and practicable manner. In burning this right of way it was required to exercise ordinary skill and care, and it is probable that, in view of the conceded fact that the herbage on the common outside of the fence had been eaten down closely by the cattle, and there was nothing there to burn, it could not be said that defendant was negligent in not foreseeing

that it might become a technical trespasser by setting fire where it could spread a few inches, at places, off and outside its right of way. And again, when considering the question of defendant's negligence, we are confronted with the query whether, under the circumstances, defendant's section men could have reasonably anticipated that children would come so near the fence as to be in danger from fire which might spread a very few inches outside its right of way. But it is unnecessary for us to rest a decision upon the insufficiency of the evidence on the question of defendant's negligence, for, after careful consideration, we are of the opinion that the court erred in denying defendant's motion for a directed verdict. In other words, our opinion is that the evidence was conclusively against plaintiff's right to recover.

The competency of the infant witness Douth was not really questioned by plaintiff's counsel when a qualified interpreter was selected, and the court was not called upon to rule as to his competency. But, had a ruling been made, and the witness then been examined, it is clear that there would have been no abuse of the sound discretion conferred upon a trial court in such cases. See State v. Levy, 23 Minn. 104. And, as before stated, the testimony of this small boy had every appearance of truthfulness. Again, we have the fact that plaintiff did not undertake to controvert this boy's statement by that of his own son, two years older. This failure to adduce evidence within plaintiff's control, which was reasonably calculated to throw light upon the occurrence, and to fix defendant's responsibility, may be considered as tending to militate against his claim that the child was not inside the fence when her clothing was ignited. Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 74 N. W. 167. Further than this, we have the undisputed testimony—plaintiff's counsel not objecting to its admission—of the witness Heidemann as to what transpired when he went with plaintiff's wife, her son Gustav, Mrs. Douth, and her son John, to the scene of the accident, a few days thereafter. Here, too, plaintiff failed to adduce evidence as to this occurrence which was within his control. And, finally, we have the silent witnesses, the bits of clothing which remained upon the barbs of the wire fence,—strong evidence that the little child had hastily crawled through between

the wires in her attempt to reach her home, just as related by the small boys.

Our conclusion is that the court below should have directed a verdict in defendant's favor, and that it was error to deny the motion of that import. Of course, this disposes of plaintiff's appeal from that part of the order which granted a new trial. The order appealed from must be reversed as an entirety. It is so directed, and, when the case is remanded, the court below will order judgment to be entered in defendant's favor on the merits.