MERCHANTS STATE BANK OF ELIZABETH v.
ALBERT H. A. UMLAUF.
MERCHANTS STATE BANK OF ELIZABETH v.
EMIL O. UMLAUF.[1]

July 25, 1924.

No. 24,022.

**Negligence of defendants question for jury.**

1. Evidence showing that the payee of promissory notes signed by defendants supplied them with intoxicating liquor, and, when they were under its influence, requested them to sign blank applications for life insurance, representing that if they did so they would help him in a contest among agents of his company and would not have to take or pay for the policies when they came, and also showing that defendants did not know or believe that they were signing notes, but, because of the payee's representations, supposed they were merely signing applications for insurance, makes the question of defendant's negligence one for the jury, even though defendants could read English, knew the difference between a note and an application for insurance, and had an opportunity to read the papers they signed, but failed to do so.

**When holder of note in due course cannot recover from maker of it.**

2. If the facts necessary to establish the defense given by section 6015, G. S. 1913, are proved, a holder in due course cannot recover from the maker of a promissory note whose signature thereto was obtained by fraudulent representations.

**Charge to jury concerning fraudulent use of intoxicants.**

3. The trial court did not err in instructing the jury that in determining whether defendants were negligent in signing the notes in suit they might consider evidence tending to show that the payee induced them to drink intoxicating liquor to facilitate the accomplishment of a fraudulent design to obtain their signatures.

Two actions in the district court for Otter Tail county upon promissory notes. The cases were tried together before Parsons, J.,

[1]Reported in 199 N. W. 819.

who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which made the specific findings mentioned in the seventh paragraph of the opinion and returned a verdict in favor of defendant in each case. From an order denying its motion in each case for judgment notwithstanding the verdicts or for a new trial, plaintiff appealed. Affirmed.

*N. F. Field,* for appellant.

*George W. Frankberg* and *A. P. Frankberg,* for respondents.

LEES, C.

Each of these actions was brought upon a promissory note payable to John J. Maurin and by him indorsed to plaintiff before maturity. The defense in each was based on section 6015, G. S. 1913. The actions were consolidated for trial by jury. The jury made special findings and returned general verdicts in favor of the defendants. Plaintiff has appealed from orders denying its motions for judgment or for a new trial.

The defendants, who are brothers, are single men, living with their mother on a farm near Fergus Falls. One is 40 and the other 39 years of age. They have had a common school education and the experience in business commonly acquired by men actively engaged in farming. They read and write English, keep a checking account with a bank, and have executed notes and chattel mortgages.

The notes in question were signed on January 31, 1921. The payee Maurin, a man with whom defendants have been acquainted for a number of years, was a soliciting agent for the Pacific Mutual Life Insurance Company at Fergus Falls. He took the notes for the first premium on life insurance policies issued to defendants. The policies, for $15,000 each, were subsequently mailed by Maurin to defendants, who refused to receive them. Plaintiff, as indorsee of the notes, claims the rights of a holder in due course.

The defendants were in Fergus Falls on the day the notes were signed and met Maurin casually. They testified that late in the afternoon, at Maurin's invitation, they went to his house, where he produced two quarts of moonshine whiskey, which they proceeded to drink with him. Maurin denied that he furnished them with liquor

on January 31, and testified that they were at his house again on the following evening, when he did provide whiskey for them and other invited guests. As related by defendants and their niece, who was with them, defendants and Maurin spent the evening of January 31 in drinking. At about 9 o'clock a doctor, called to the house by Maurin, appeared on the scene and made a superficial examination of defendants to ascertain whether they were fit subjects for life insurance. The doctor, when on the stand as a witness for plaintiff, testified that defendants were not intoxicated when he examined them, although there was a perceptible odor of liquor about them. Before the doctor arrived, Maurin told defendants that he was in a contest with other agents of his company to get insurance, and, if he wrote a certain amount, he and his wife would get a trip to California, with expenses paid by the company. He requested each of them to sign an application for a policy of $15,000, telling them they would not have to take the policies when they came or pay for them, and that he merely wanted them to sign the applications to help him in the contest. At first defendants refused to comply with the request, but, pressed by Maurin "to help him out in this contest," they finally consented, and late in the evening each signed what he supposed to be an application for insurance.

They testified that nothing was said about notes; that they did not know or believe that they had signed notes; that Maurin told them and they believed that they were signing blank applications for insurance; that he had sold them insurance before; that on those occasions they had first signed application blanks and not until they received the policies had they given notes for the premium; and that they were both considerably under the influence of liquor when they signed the papers Maurin laid before them. It was shown that one of the defendants was then carrying insurance amounting to $13,000 and the other $11,000. Apparently Maurin had written it, and it is a fair inference that defendants were reasonably familiar with the procedure in taking out insurance. Their ability to distinguish a note from an application for life insurance, and their opportunity to read the papers they signed, cannot be disputed. The explanation for their failure to discover Maurin's

deception, as given by the defendant Emil Umlauf, is that they "just believed John Maurin, that is all, that there would be no trouble of any kind. * * * I was depending on Mr. Maurin." Asked whether he usually signed papers in that way, he answered "no", and admitted that he had been careless to some extent.

This in substance is the evidence upon which the findings and verdict of the jury were based. Evidently the jury disbelieved Maurin, who flatly denied nearly everything to which defendants and their niece had testified.

The jury found specifically that defendants' signatures were obtained by Maurin's fraudulent representation as to the nature and terms of the instruments they signed; that they did not believe they were notes, and that they were not negligent in signing the instruments without knowledge of their terms; and that plaintiff was not a holder of the notes in due course.

The points raised by appellant are: (1) That the evidence shows conclusively that defendants were guilty of negligence, or at least the showing to the contrary is so unsatisfactory that a new trial should have been granted; (2) that as a matter of law plaintiff is a holder in due course; (3) that the court erred in the admission of evidence and in the instructions to the jury with respect to the drinking of intoxicating liquor.

1. Maurin was not a stranger to the defendants; they had dealt with him before; they were invited guests at his house; he professed to be extending hospitality to them. If their story is true, he saw to it that they became intoxicated, and, when their minds were stupefied by liquor, seized the opportunity to sell them insurance they did not need and would not have taken if they had known what they were doing. Under these circumstances, can it be said that the question of negligence was not one for the jury?

The statute declares that in all cases the question of negligence shall be one of fact for the jury. Ever since the decision of O'Gara, King & Co. v. Hansing, 88 Minn. 401, 93 N. W. 307, it has been held that the statute does not compel the court to submit the question to the jury if there is no evidence at all raising an issue with respect to it.

The degree of negligence which, as against a holder in due course, will exclude the defense given by the statute, cannot be exactly defined. If the maker of a negotiable instrument affixes his signature to it without taking any precautions to ascertain its terms and character, he should not be allowed to shift the loss to a bona fide purchaser of the paper. If, without justification, he misplaces his confidence in one who deceives him, he ought not to be heard to say that an innocent purchaser of the paper is not protected by the rules applicable to negotiable instruments, for it is better that he should suffer the consequences of the fraud his carelessness invited than that the character of commercial paper should be impaired. See Mackey v. Peterson, 29 Minn. 298, 13 N. W. 132, 43 Am. Rep. 211. Defendants should have read the instruments they signed. There would have been no excuse for not doing so if they had not been so generously supplied with liquor by Maurin. It is a matter of common knowledge that too free an indulgence in intoxicating liquor makes men susceptible to the influence of those with whom they are drinking. It lulls suspicion and breaks down the barriers behind which sober men retire when engaged in a business transaction in which their several interests are antagonistic. It will not do to apply the same standard of care and prudence in the business transactions of intoxicated and of sober men, especially when intoxication has been designedly produced by another for the very purpose of enabling him to take advantage of his victim and get his signature to an instrument he would not have signed had he been sober.

There is not much profit in citing cases, for the facts are rarely so similar in any two of them as to make the decision of one determinative of the other. Savings Bank of Kewanee v. Schaal, 156 Minn. 424, 195 N. W. 141, is the only one of our decisions involving a note obtained by a person who had given intoxicating liquor to the maker. We have examined the cases in this and in other jurisdictions which are cited in the briefs. None are directly in point. In Green v. Gunsten, 154 Wis. 69, 142 N. W. 261, 46 L. R. A. (N. S.) 213, it was said that, if the maker of a note signed it when he was so completely intoxicated as to be temporarily deprived of his rea-

son and understanding, the rule of ordinary care would not apply because such a man is incapable of exercising any care whatever; that it could not be held that he should have exercised care not to get drunk, for the signing of notes is not the usual or probable result of drunkenness, and a drunken man, if left alone and not taken advantage of by others, is not likely to sign papers. Manifestly intoxication has a bearing on the question of negligence. Although it may not be so great as to render a man wholly incapable of exercising care in a business transaction, it may nevertheless put him in such a condition as to partially destroy his ability to exercise care.

In the case at bar the degree of intoxication is in dispute. We hold that it was for the jury to determine whether defendants were intoxicated to such a degree as to impair their judgment and ability to protect themselves from imposition, and that, if the jury believed the testimony of defendants and their niece, they were warranted in finding that defendants were not guilty of negligence in signing the notes in reliance upon the representations Maurin made to them.

2. It is unnecessary, in view of the foregoing conclusion, to consider whether plaintiff is a holder in due course. The finding that defendants' signatures were obtained by fraud and without negligence on their part defeats a recovery, even though plaintiff took the notes in good faith. Albrecht v. Rathai, 150 Minn. 256, 185 N. W. 259.

3. The jury were instructed that defendants' intoxication was not a defense, but, if Maurin induced them to drink intoxicating liquor to facilitate the accomplishment of a fraudulent design with reference to the notes, defendants' condition produced by drink might be considered in determining whether they were negligent in signing the notes. We think these instructions were proper for the reasons heretofore mentioned.

Upon the whole, our conclusion is that the verdict of the jury, approved by the trial court, should stand, and hence the order appealed from is affirmed.