Matthias, J.
 

 The principal contention between the parties in this case arises from the defense that the note sued upon was procured by fraud and trickery upon the part of the agents of the Union Drug Company, the payee of the note. Before going into a discussion of the question of law presented it seems essential that there be a recitation of the facts disclosed by the record. There is little dispute as to the facts upon which the controversy is based.
 

 
 *232
 
 The only testimony with reference to the occurrence at the time of the execution of the note was that of the defendant, Gross, the maker of the note. Gross was a resident of Athens. Upon the invitation of Clyde Hill, a former resident of Athens and an acquaintance of Gross, the latter met Hill and Pittinger at a hotel in Athens. Hill and Pittinger informed Gross that they were representing a drug store corporation, which then had seven stores in operation, managed by competent men, and that the stores were profitable; that they had for sale about $75,000 or $80,000 of preferred stock for the purpose of starting three more drug stores. Other statements of Hill and Pittinger giving assurance of the success of their proposition were testified to by Gross, which need not be given in detail. The further testimony of Gross is as follows:
 

 “I said to them, ‘Your proposition looks good. If you had some of this stock about March 1st I would take some of it.’ Pittinger turned to Hili, and said, ‘We can fix that, can’t we?’ and Hill said ‘Yes; I guess we can.’ I said ‘I will take 20 shares of the preferred and that will give me 8 shares of common.’ Pittinger started to write out the contract to take this stock. He had a sheet of paper, I would say somewhere near the size of that yellow sheet there, and he filled that in. It had some print in it, and I kept talking to Hill about the drug stores while he was filling this in. When he got through he shoved it over to me. I was on one side of the table, and they were on the other side. I just sketched down over the paper to see whether it had the proper amount of stock in it. I didn’t read the paper thoroughly through.
 
 *233
 
 I just sketched it to see if it was the proper amount of stock in it. It was only supposed to be a contract for stock, and I signed it. My understanding was it was to come through the bank of Athens on the 1st of March with a sight draft, and on March 1st I was notified there was a note there. I found a note and I said ‘Is there any stock with this note?’ and they said, ‘No; this is all we got.’ ”
 

 Gross further testified that he had known Hill many years and had confidence in him; that nothing was said about signing a note; that the paper he signed was about the size of the old foolscap sheet, the whole surface of which was covered either with printing or with writing filling in the blank spaces; that the note which came to the bank was about one-fourth the size of the paper he signed, and that before he signed it Hill had said of it, “Here is the paper filled out with the amount of stock we agreed on, 20 shares of preferred and 8 shares of common.” Gross then testified that he “sketched down the paper and seen it was there and signed it.” The paper was signed in two places, the separate subscription for stock and the promissory note.
 

 The testimony of Gross, as shown by the record, discloses that at the time of the occurrence detailed Gross was 64 years of age; had lived in Athens about 30 years, where he had been engaged in the mercantile business; was interested as a stockholder and a member of the board of directors of an oil company in that vicinity, and also to some extent as an independent operator, taking leases and drilling for oil. His eyesight with glasses was “pretty fair,” and his hearing such that he
 
 *234
 
 could hear ordinary conversation. The record further discloses that the paper signed by Gross was taken to the office of the Union Drug Company, at Canton, and there turned over to the secretary of the company, where it was cut in two, thereby severing the subscription for stock from the promissory note. The record discloses only a copy of the note, and not the entire paper described by the president of the drug company as a subscription blank with a note attached. The subscription contract was filed in the office of the secretary, and the note came into the possession of the president of the drug company, who testifies to his negotiation and sale of it to the plaintiff, the Ohio Savings & Trust Company.
 

 The judgment in favor ,of the defendant was reversed by the Court of Appeals for error in giving to the jury before argument an instruction requested by counsel for the defendant, the substance of which was also given to the jury in the general charge. That instruction is as follows:
 

 “If you find from the evidence that defendant actually signed and delivered the instrument set out in the petition, and that at the time of signing and delivering the same he was induced, by fraudulent representations as to the character of the paper, to believe that he was signing and delivering an instrument other than a promissory note and that his ignorance of the true character of the paper was not attributable, in whole or in part, to his own negligence in the premises, then your verdict should be for the defendant.”
 

 It is urged that this instruction was erroneous because it ignored the rights of a bolder in due
 
 *235
 
 course, and for the further reason that the court thereby submitted to the jury the question of defendant’s negligence, when the facts disclosed by the record show his negligence as a matter of law.
 

 The distinction must be kept in mind between cases in which a party, through fraudulent representations, signs an instrument which he intends to be a negotiable promissory note, usually referred to as fraud in the inducement, and those where through fraud and misrepresentation or deceit and trickery his signature is procured to a negotiable promissory note, when he had no intention or purpose to sign any such instrument, termed fraud in the inception of the instrument. It is quite well settled that fraud in the transaction out of which the instrument arose, or in respect to the consideration for which it was given, is no defense against a holder in due course. A different rule prevails where the signature of the maker of a negotiable instrument was obtained by fraudulent trick or device and the maker did not know that the paper he was signing was a negotiable instrument and had no intention of making or delivering such instrument. 3 Ruling Case Law, 1008.
 

 The question of the right of a holder in due course under circumstances such as here presented was considered in three cases, all in the 29th Ohio State Report, in each of which the opinion was written by Mcllvaine, J. In the first of these,
 
 De Camp
 
 v.
 
 Hamma, Exr.,
 
 page 467, which was an action by a
 
 tona fide
 
 holder in due course, it was held in the syllabus that:
 

 “The defendant is not liable where it is shown:
 

 1. That at the time of signing and delivering the
 
 *236
 
 note, he was induced, by fraudulent representations as to the character of the paper, to believe that he was signing and delivering an instrument other than- a promissory note. 2. That his ignorance of the true character of the paper was not attributable, in whole or in part, to his own negligence in the premises.”
 

 In that case, as in this, the fraud relied upon as a defense was not that which merely affected the consideration of the contract, but fraud in procuring the execution and delivery of the instrument itself. In that case it was clear that the defendant did not know the true character of the instrument signed, and that his action was induced by fraudulent representations that the note was nothing but a nonnegotiable contract appointing the defendant an agent for the sale of a corn harvester. The question of negligence of the defendant in ascertaining the true character of the instrument was submitted to the jury, which found for the defendant, and the judgment rendered in his favor was affirmed by the Distinct Court and by the Supreme Court. However, in that case it was stated by the Supreme Court that it did not appear that the defendant was a person possessing the ordinary faculties and knowledge, but that it was only found in the special verdict that he was not guilty of any negligence or want of ordinary care. In relation to the amount of care required to afford the defendant relief from the consequences of his act, it is there stated:
 

 “There can be no doubt that a person possessing the ordinary faculties, and being able to read and write, who relies solely on the representation of
 
 *237
 
 the other contracting party as to the character of the instrument, should be regarded as negligent as against an innocent indorsee before maturity and for value.”
 

 In the case of
 
 Ross
 
 v.
 
 Doland,
 
 29 Ohio St., 473, the defense was made that the maker signed the note sued upon under the belief induced by fraud of the payee that he was signing an agency contract. The first proposition of the syllabus is as follows:
 

 “In an action against the maker by a
 
 bona fide
 
 indorsee, before due and for value, of a negotiable promissory note, the defendant is liable if guilty of negligence in the execution thereof, although he did not intend to sign a note, and was induced, through fraudulent representations as to its character, to believe that the instrument executed was one of a different purport.”
 

 In the opinion the view is tersely expressed that, a negotiable instrument with the genuine signature of the party having come into the hands of a
 
 bona fide
 
 holder for value before maturity, its validity is presumed, and that if such party seeks to escape liability on the ground that it was not voluntarily executed the burden of showing that fact rests upon him, and also of showing that he was without negligence in the premises.
 

 In the case of
 
 Winchell
 
 v.
 
 Crider,
 
 29 Ohio St., 480, the defense was that the signature of the' defendant to the note was procured by fraud inducing the belief that he was signing only an agency contract for the sale of plows, the terms of which had been agreed upon. A request to charge the jury substantially as requested by the-
 
 *238
 
 defendant here was refused. The court, through Mcllvaine, J., who rendered the opinion, held that the requested charge stated the true rule of law, and should have been given to the jury, if the testimony in the case even tended to show that the defendant was free from negligence in the execution of the note. After quoting the testimony of the defendant to the effect that he did not read the papers at the time of signing them, that he could read, and no objection was made to his reading the papers, the court concluded that upon the question of the exercise of proper care and caution by the defendant there was no issue of fact for the jury to determine; that the admitted conduct of the defendant presented a mere question of law, and that the law upon the admitted facts was that the defendant was guilty of negligence, and that therefore there was no error to his prejudice in refusing to give the requested instruction. The syllabus is as follows:
 

 “A person possessed of the ordinary faculties and ability to read, signed and delivered a negotiable promissory note without knowing it to be such, but without reading the same, having an opportunity to do so, relying solely on the representation of the payee that the paper was an instrument other than a note. Held, as against a
 
 bona fide
 
 holder before maturity for value, such maker will not be permitted to deny the due execution of the note.”
 

 In the case of
 
 Perkins
 
 v.
 
 White,
 
 36 Ohio St., 530, in which also the opinion was written by Mcllvaine, J., the court held that to exonerate the maker from liability on a note “which he signed and delivered,'
 
 *239
 
 believing at the time that the paper signed and delivered was another instrument, it is necessary to show that the maker was without fault or negligence in the premises.” Judge Mcllvaine, in his opinion, reiterated the doctrine that in order to exonerate the maker from liability to an innocent holder for value to whom the note was indorsed before maturity it was necessary to show that he was without negligence, and that the burden of this showing rests upon the defense. There was a finding that the maker could not read or write, and the court held that finding not equivalent to a finding that he was free from negligence in signing and delivering the instrument, and that, regardless of his inability to read, the circumstances detailed in the finding of fact tended at least to show that the exercise of ordinary prudence on his part would have prevented the consummation of the fraud.
 

 The principle announced in these cases was applied in the case of
 
 Edgar
 
 v.
 
 Haines,
 
 109 Ohio St., 159, 141 N. E., 837, 38 A. L. R., 795.
 

 The decisions of the courts of various states are somewhat in confusion upon the question of the liability of the maker of a promissory note which he was induced to sign by the fraudulent representation of the payee that such paper was an instrument of a different character. The difference may to some extent be accounted for by the variety of circumstances presented in the various cases.. No good purpose could be served by a discussion, or even a citation, of these many decisions. The weight of authority and the better reasoning support the-view announced in the Ohio cases above
 
 *240
 
 cited. The general rule supported by many authorities is stated in 3 Ruling Case Law, 1009, as follows:
 

 “If the maker was negligent in not ascertaining the character of the paper before signing it he will not be permitted to defend against it. As to what constitutes negligence the authorities are not in harmony. There is substantial agreement that signing the paper without attempting to learn its contents constitutes negligence. And, according to the general trend of decision, the defendant must be deemed negligent where he has shown that he, being able to read, signed the instrument without reading it.”
 

 The same general principles are stated in 8 Corpus Juris, 792, supported by many citations, as follows:
 

 “Hence, one in possession of his faculties who has the opportunity for examination and relies on the representations of persons with whom he is dealing cannot claim exemption for his act if the instrument which he signed should prove other than he had been led to believe. The reason for this rule is that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.”
 

 The case of
 
 Chapman
 
 v.
 
 Rose,
 
 56 N. Y., 137, 15 Am. Rep., 401, is a leading case upon this proposition and has been frequently cited and followed. The defendant claimed that the note sued upon was presented to him ás a duplicate of an order for a hay fork, which he had just previously signed. The court suggested the necessity of holding
 
 *241
 
 firmly “to the doctrine that he who, by his carelessness or undue confidence, has enabled another to obtain the money of an innocent person, shall answer the loss. * * * When he signs an obligation without ascertaining its character and extent, which he has the means to do, upon the representations of another, he puts confidence in that person; and if injury ensues to an innocent third person by reason of that confidence, his act is the means of the injury, and he ought to answer to it.”
 

 It is disclosed by the record that the note sued upon in this case is in the usual form, and in type clear and distinct. The most casual observation makes manifest its terms as well as its force and effect. The defendant had full opportunity to read it. He states he “sketched it.” There is no dispute in the evidence, and one of two inferences necessarily follows: The defendant either knew he was signing a promissory note, or he was grossly negligent in failing to observe that the instrument immediately preceding his signature was a negotiable note. The promissory note was without any condition whatever, and there was no alteration of its terms or provisions.
 

 The court gave no instruction, either general or specific, as to what would constitute negligence of the defendant under the circumstances. Indeed it is difficult to suggest any instruction applicable to the case which could properly have been given which would not have been a virtual declaration of the negligence of the defendant. The instruction given invited a finding against the plaintiff, even though the jury found the plaintiff a holder in due course.
 

 
 *242
 
 If under the facts admitted in the
 
 Wmchell case, supra,
 
 the defendant was negligent as a matter of law, the same conclusion seems to be required from the undisputed facts in the instant case. Even in a state having a statute requiring the submission of negligence to a jury in such case, it was held that such issue need not be submitted to the jury where no inference but that of negligence could be drawn from the facts presented.
 
 Merchants’ State Bank of Elizabeth
 
 v.
 
 Umlauf,
 
 160 Minn., 255, 199 N. W., 819.
 

 Particularly applicable to this class of cases is the language used by the court in
 
 Douglass
 
 v.
 
 Matting,
 
 29 Iowa, 498, 4 Am. Rep., 238:
 

 “It is better that defendant, and others who so carelessly affix their names to paper, the contents of which are unknown to them, should suffer from the fraud which their recklessness invites, than that the character of commercial paper should be impaired, and the business of the country thus interfered with and unsettled.”
 

 It has been quite generally held that Section 57 of the Uniform Negotiable Instruments Act, which is Section 8162, G-eneral Code, has not changed the rule of the common law in regard to the rights of a
 
 bona fide
 
 holder, such as involved in this case. JBrannan on Negotiable Instruments, pp. 436 and 437, and cases cited.
 

 It is well settled that an incorrect instruction which is prejudicial, given before argument, may not be disregarded by reason of the fact that a correct instruction covering the same issue was given either before argument or in the general charge. Although a general verdict was returned,
 
 *243
 
 and no interrogatories were submitted, the rule announced in
 
 McAllister
 
 v.
 
 Hartzell,
 
 60 Ohio St., 69, 53 N. E., 715, and in later cases adhering to the principle there announced, has no application, for the reason that the error committed affected the entire issue to be submitted to the jury.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen, Kinkade, Robinson and Jones, JJ., concur.