# LENORA K. GLASSER v. GEORGE O'BRIEN AND OTHERS.[1]

October 7, 1927.

No. 26,162.

**Creditor proved his attachment valid and chattel mortgagee failed to prove she was a good faith mortgagee.**

Plaintiff, claiming to be owner of certain horses by virtue of a chattel mortgage, sued the defendant in conversion, he as sheriff having under a writ of attachment taken the same from the possession of the mortgagor. It is *held:*

[1] If the plaintiff in the attachment action was a creditor who had a valid attachment levied upon the property covered by plaintiff's chattel mortgage when she brought her suit, G. S. 1923, § 8345, casts the burden upon her to prove that she took her mortgage in good faith and not for the purpose of hindering, delaying or defrauding the attaching creditor.

[2] Said statute was not repealed by implication by L. 1921, c. 415 (the uniform fraudulent conveyance act), and is to be *held* identical in meaning to a similar statute existing and construed prior to the revision of 1905.

[3] The attaching creditor sufficiently proved the validity of the attachment and a cause of action for the recovery of money in the action; hence was a creditor within the meaning of § 8345.

[4] No reversible error could be predicated upon the submission to the jury of the question whether the attachment creditor was a creditor in fact, for the testimony was undisputed that it was such at least to the extent of $4,000.

[5] The finding of the jury, that plaintiff did not sustain the burden of proof that the mortgage was taken in good faith and not for the purpose of hindering, delaying or defrauding the attaching creditor, has ample support.

[6] Evidence was properly admitted that at the same time plaintiff took this mortgage she also took another from the mortgagor covering all the balance of its property within this state.

[7] There was no error in admitting evidence of prior mortgages unpaid to other parties for the purpose of proving the falsity of the representations of plaintiff's husband, the president of the mortgagor.

[1]Reported in 215 N. W. 517.

Chattel Mortgages, 11 C. J. p. 563 n. 69; p. 566 n. 90, 91; p. 571 n. 42
New; p. 614 n. 33; p. 615 n. 43; p. 616 n. 71.
Fraudulent Conveyances, 27 C. J. p. 807 n. 27; p. 835 n. 63; p. 836
n. 66.

Plaintiff appealed from an order of the district court for Itasca
county, Stanton, J., denying her motion for a new trial. Affirmed.

R. J. Powell, for appellant.

Denegre, McDermott, Stearns & Stone, for respondents.

HOLT, J.

The appeal is from an order denying a new trial after a verdict
for defendants.

The action was in conversion. Plaintiff's ownership of and right
of possession to 44 horses, a pair of mules, 23 sets of harness, and
46 blankets, valued at $8,000, which she alleges defendant seized and
converted on May 7, 1923, is through a chattel mortgage executed
to her by the Dakota Central Construction Company, a South Da-
kota corporation. Defendant as sheriff of Itasca county, Minne-
sota, justified under a writ of attachment directed against property
of the mortgagor, the Dakota Central Construction Company. When
plaintiff served her claim of ownership upon the sheriff, plaintiff in
the attachment proceeding, the Chicago Box & Crating Company,
gave the statutory bond to the sheriff, who retained the levy, and
this action resulted. The Chicago Box & Crating Company and
its surety were subsequently impleaded as defendants. The Chi-
cago Box & Crating Company will hereinafter be referred to as the
Chicago company, and the Dakota Central Construction Company
as the Dakota company.

Plaintiff's chattel mortgage was executed on January 16, 1923,
and purported to secure the payment of three promissory notes of
the following amounts and dates, viz. one for $100, dated March 4,
1922; one for $900, dated May 6, 1922; and one for $3,500, dated
January 16, 1923, each note being due on demand. The mortgage
was duly filed on January 31, 1923, in the county where the prop-
erty was.

The claim under the attachment arises under these facts: The Chicago company owned considerable timber in Itasca county, and in December, 1922, entered into a contract with the Dakota company to log the same. Under that contract active hauling of the logs was to begin not later than January 1, 1923, and the Dakota company was to give the Chicago company a surety bond of $15,000 for the faithful performance of the contract before any payments thereunder should be made to the Dakota company. In February, 1923, the Chicago company brought an action against the Dakota company for breach of the contract, wherein it was alleged that the latter had failed to begin hauling as agreed, had refused to furnish the surety bond required, that the Chicago company had advanced to the Dakota company $4,000, and that the latter threatened to abandon the contract and all attempts to perform it and ship its horses and equipment out of the state. Damages were alleged in the amount of $75,000, and an injunction was sought to restrain the Dakota company from abandoning the contract and from removing its property. It obtained a temporary restraining order which was later discharged. Thereafter, and on April 23, 1923, the plaintiff in that action, the Chicago company, procured the writ of attachment under which the defendant herein levied upon and justifies holding the property described in the chattel mortgage.

[1] The main contentions in the appeal turn upon the correctness of the trial court's view of two issues submitted to the jury, and whether there was evidence supporting a finding in favor of defendants on both; for if there was a failure as to either the general verdict cannot stand, namely: Was the Chicago company a creditor and was it such so as to require plaintiff to prove "that such mortgage was executed in good faith, and not for the purpose of hindering, delaying or defrauding any creditor of the mortgagor," as prescribed by G. S. 1923, § 8345.

In this case the mortgagor retained possession of the property mortgaged which was seized under the writ after the mortgage was properly filed. The mortgagee assails the right of an alleged creditor in possession. The defendants (the sheriff, the impleaded

creditor, the Chicago company and its bondsman) introduced the pleadings and files in the attachment suit and also evidence of the contract referred to, its breach, and the fact that $4,000 had been paid to the Dakota company by the Chicago company, when under the terms of the contract no payments were due, and that no part had been repaid. No damages other than would result from the failure to repay the $4,000 loaned or advanced by the Chicago company was proved. We think that amount at least recoverable in the action on the showing made in this record. So there was proof that the Chicago company was a creditor in fact; and under the attachment it was in possession of the property "armed with legal process" able to claim the benefit of § 8345. Singer v. Farmers State Bank of Goodridge, 166 Minn. 327, 207 N. W. 631. This statute does not speak of existing or subsequent creditors, but of course refers to a creditor who has laid hold of the property and is in possession thereof when the mortgagor in a chattel mortgage, who did not obtain possession of the property when the mortgage was made, asserts ownership or right of possession thereto.

But plaintiff makes the claim that the Chicago company's action was for equitable relief and the attachment unauthorized, and at any rate, it sought and obtained a temporary injunction or equitable relief and is precluded from demanding a money judgment. There is no merit in this. The temporary injunction was vacated before the affidavit for attachment was made. And clearly the action is one for the recovery of a money judgment. Our attachment statute is very broad. G. S. 1923, §§ 9342, 9343.

Again there is asserted to be a fatal variance between the cause of action stated in the complaint and the one stated in the affidavit for attachment. The only material variance is that the affidavit contains no reference to the $4,000 advanced to the Dakota company by the Chicago company. But we see no reason why, under the testimony, a recovery on account thereof could not be had in the action. We think it was not necessary to prove all the damages recoverable in order to give the Chicago company a standing as a creditor in the present action. The action in the attachment suit

being for the recovery of money from the defendant therein and it being a foreign corporation, there was a valid ground for the writ. It may be questioned whether an attaching creditor, defending against a mortgagee claiming the property without ever having had possession thereof, is not as a matter of law a creditor so as to place the burden of proof stated in § 8345 upon the mortgagee without other proof than possession taken under an attachment proceeding valid on its face. But it is not necessary to a determination of the instant case to pass on that point.

[2] Appellant presents a very ingenious argument, to the effect that the revision of 1905 made such a change in the language of G. S. 1923, § 8345, that prior decisions of this court, such as Braley v. Byrnes, 25 Minn. 297, are no longer binding authorities. But in First Nat. Bank of Beaver Creek v. Wiggins, 154 Minn. 84, 191 N. W. 264, it was expressly held that the change in the language of the section mentioned in the revision did not alter the meaning of the law as it had been construed prior thereto. It is further urged that the uniform fraudulent conveyance act, L. 1921, p. 642, c. 415 (G. S. 1923, §§ 8475-8489), has superseded or repealed by implication § 8345.

We find nothing in c. 415 which is antagonistic to or inconsistent with the provisions of § 8345. Section 8467, G. S. 1923, is expressly left in force, which presumes every sale by a vendor of goods or chattels, when there is not an immediate change of possession, fraudulent and void as against creditors of the vendor unless it is made to appear that it was made in good faith and without any intent to hinder, delay or defraud such creditors. This section creates a rebuttable presumption in case of a sale of chattels. Tousley v. First Nat. Bank of Pine City, 155 Minn. 162, 193 N. W. 38. And no more is created by § 8345 in case of a mortgage of chattels. And it is fair to assume that when the legislature expressly indicated that one should remain there should be held no repeal of the other which never was a part of the chapter in respect to fraudulent conveyances, as was § 8467.

[3] We think the legal steps the Chicago company took to lay hold of the property plaintiff claims under her mortgage were ade-

quate, and that the testimony was uncontradicted that when it so did it was a creditor. There was no evidence contradicting a breach by the Dakota company of its contract with the Chicago company, or that the money advanced had been repaid, or that work had been done under the contract so as to constitute payment in whole or in part.

[4] Hence, no error can be predicated upon the submission to the jury of the issue of the Chicago company's being a creditor.

[5] Does the evidence sustain the finding, included in the verdict, that plaintiff did not prove that her mortgage was executed in good faith and not for the purpose of hindering, delaying or defrauding any creditor. Plaintiff did not testify. Her husband was at the trial and called for cross-examination. He was at all times the president of the Dakota company. Plaintiff did not see fit to have him testify relative to the consideration of the chattel mortgage or the circumstances leading up to its execution. The mortgage was given after the breach of the contract with the Chicago company.

[6] At the same time the chattel mortgage in question was received plaintiff also received another mortgage on all other property of the Dakota company within this state. These mortgages were not filed until after the Chicago company had advanced some of its money on the strength of the representations of the husband of plaintiff that the equipment of the company was wholly free of encumbrances, when as a matter of fact both of his wife's mortgages had been executed, and there also existed unsatisfied mortgages in South Dakota upon part of the property herein involved. The jury had ample grounds for finding actual fraud and an attempt to cover up all property from the reach of the Chicago company. Plaintiff's intent and purpose not to hinder, delay or defraud the Chicago company was for her to prove; and as neither she nor anyone who acted for her, if such there were, in the transaction with the Dakota company, testified, the jury could take that fact into consideration. Indeed, where a party upon whom is the burden to prove good faith and an intent not to defraud fails to take the witness stand,

no great fault can be found with the triers of fact who find that burden of proof has not been sustained. We see no reversible error in receiving evidence of the giving to plaintiff [of] another mortgage covering the balance of the mortgagor's property in this state at the same time that she took the one directly involved here.

[7] The same is true of the South Dakota mortgages although their bearing was of much less consequence, they not running to plaintiff, and were admissible only to show fraud on the part of her husband when assuring the Chicago company that the equipment of the Dakota company was free of encumbrances.

We do not understand appellant to question the correctness of the court's charge with respect to the burden of proof if § 8345 is still in force and to be interpreted as by our decisions prior to the revision of 1905 and the enactment of L. 1921, p. 642, c. 415.

For reasons stated we find no reversible error in the record.

The order is affirmed.

STONE, J., took no part.